William T. Eaton et al., Respondents, *v.* The Allegany Gas Company (Limited), Impleaded, etc., Appellant.

In April, 1881, defendant F. executed an instrument, by the terms of which he "granted, leased and demised" to plaintiffs certain premises, "with the exclusive right to dig, bore and mine for and gather oil or gases, * * * to have and to hold the same for twelve years from this date, or so long as oil is found in paying quantities, * * * with the full right of appropriating to their own use all the oil or gases found upon said premises during said term." Plaintiffs erected an engine-house, drilled a well upon the premises, finding natural gas in large quantities and a small amount of oil, but not in paying quantities; they used the gas for fuel in running their engine while drilling, but not for any other purpose. In the spring of 1882 plaintiffs ceased operations and did not thereafter make any attempt to obtain oil, and in the autumn of that year removed their engine, boiler and machinery, but left thereon the engine-house, derrick, the casing in the well, and the tubing which conducted the gas from it. In 1884 F. leased the premises to defendant T. for the purpose of mining, drilling, etc., for oil or gas. T. assigned the lease to defendant, the A. Gas Co., which company cleaned out and tubed the well, and have since then procured gas therefrom. In an action to restrain said company from appropriating to itself the well and its products, *held*, that the instrument or lease so called did not create an absolute lease of twelve years, but the term was limited to the time during which oil was produced in paying quantities; and that while the lessees had the right of possession as long as they were engaged in good faith in boring wells and testing the oil-producing capacity of the land, when they abandoned their search and ceased to use said land, their right to occupy it ceased, and the contract was legally terminated by the lessor.

Reported below, 42 Hun, 61.

(Argued October 6, 1890; decided December 2, 1890.)

Appeal from an order of the General Term of the Supreme Court in the fifth judicial department, made October 22, 1886, which reversed a judgment in favor of defendant entered upon the report of a referee, and granted a new trial.

Since 1880, Harvey C. Foster has been the owner in fee of the land described in the written contract entered into under seal by him with Walter A. Wilcox, Amos D. Wheeler and William T. Eaton, dated April 27, 1881, and acknowledged May 9, 1881, the material parts of which are as follows:

"Agreement made this 27*th* day of *April*, 1881; between *Harvey C. Foster*, party of the first part, and *W. A. Wilcox*, *A. D. Wheeler* and *W. T. Eaton*, party of the second. Witnesseth that the said first party, in consideration of the sum of one dollar, to — paid by the second party, the receipt of which is hereby acknowledged, and of the agreements hereinafter mentioned, to be kept and performed by said second party, have granted, leased and demised, and do hereby grant, lease and demise unto the said second party, their heirs and assigns, All that tract or parcel of land situate in the Town of *Wirt*, described as follows, to wit" (here follows a description of fifteen acres of land), "with the exclusive right to dig, bore and mine for and gather all oil or gases found in and upon the aforesaid premises, to have and to hold the same for the term of twelve years from this date, or as long as oil is found in paying quantities; also the right of way to enter upon said premises for the .purpose of operating, mining or removing said oil or gases therefrom, and full power to erect all necessary buildings and tanks upon said premises for the purpose of procuring or storing said oil or gases, with the full right to said second party of *appropriating* to their own use all the oil or gases found upon said premises during said term.

"In consideration whereof the said second party agrees to give the said first party *one-eighth* part of the oil produced and saved from said premises, to be delivered on said premises to the party of the first part. The first party has the right to use for agricultural purposes whatever portion of said premises second party does not use and need for said oil and other pur-

poses herein stated.   The party of the second part covenants to commence operations for said mining purposes and prosecute the same on some portion of the above described premises within *two years* from this date, or thereafter pay to the party of the first part —— dollars per —— until work is commenced.   This lease shall be null and void and at end unless said second party shall, within *six months* from this date, commence and prosecute with due diligence, unavoidable accidents excepted, the sinking and boring of one well *on or in the vicinity of this lease to a depth* of 1,200 feet, unless oil in paying quantities is sooner found.   *   *   *

" Said second party shall have the right and power to remove their machinery, derricks, tools and fixtures, or any other property at any time from said premises.   If the party of the second part fails to keep and perform the covenants and agreements by him to be kept and performed, then this lease shall be null and void and surrendered to the party of the first part.   It is agreed that the foregoing stipulations and agreements shall apply to and bind the heirs, executors, administrators and assigns of the respective parties hereunto."

The contract is partly written and partly printed, the written words being italicised in the copy above set forth.   When this action was begun William T. Eaton was the owner of three-twelfths, Amos D. Wheeler of three-twelfths, Charles Peavy of two-twelfths, Morris C. Mulkin of two-twelfths, and the Allegany Gas Company of two-twelfths of the interest of the parties of the second part in this contract.

The parties of the second part entered upon the premises in June, 1881, erected an engine-house, placed therein an engine and boiler, with tools and machinery, erected a derrick and began drilling a well, and before the end of July had drilled to the depth of 1,093 feet, and about the middle of August had reached the depth of 1,500 feet.   Drilling was then suspended until the winter and early spring of 1882, when it was resumed and the well sunk to the depth of 1,800 feet, at an expense of about $3,000.   At the depth of 1,045 feet natural gas

was found in large quantities; at 1,093 feet some oil was found, but not in paying quantities. On one or two occasions about a barrel of oil was bailed out, but was not saved for commercial purposes and no tanks or means were provided for storing oil. The well was cased down to rock, a depth of 285 feet, but was never tubed for the purpose of obtaining the oil. The gas was conducted about 150 feet away from the well as a precaution against the destruction of the buildings and derrick by fire, the pipe being turned up at the end and the gas lighted and allowed to burn. The parties of the second part used the gas for fuel in running their engine while drilling, but not for any other purpose. In the spring of 1882 the parties of the second part ceased to prosecute operations for mining purposes on the premises and afterward did not in any manner attempt to obtain oil therefrom, which they never found in paying quantities. In the autumn of 1882 the parties of the second part removed from the premises their engine, boiler and machinery, but left thereon their engine-house, derrick, the casing in the well down to the rock, and the tubing which conducted the gas from the well. On the 8th of February, 1884, Harvey C. Foster entered into a written contract under seal with Charles P. Thurston, whereby he leased to said Thurston 100 acres of land, including the fifteen acres described in the contract first mentioned, for the purpose of mining, drilling and excavating for petroleum, rock carbon, oil and gas, or other valuable minerals or volatile substances, with the right to lay, maintain and operate pipes for the transportation of oil and gas over the other lands, and to erect structures for the purpose of drilling wells and storing gas or oil, reserving to the lessor one-fourth of all oil found, and in case gas was found to furnish Foster with light and fuel for his dwelling, and pay him an annual rental of fifty dollars for each well after the first from which gas should be taken.

The lease contains this covenant: "And it is further agreed that this instrument is subject to a lease on a part of said lands made to Wilcox, Wheeler and Eaton, in case the same is not now or does not become forfeited or canceled."

On the day of the date of the last-mentioned lease it was assigned by the lessee to the Allegany Gas Company (limited), which immediately entered into possession of the premises, cleared out and tubed the well, since which it has produced gas and become of great value. Shortly after the company began its operation the plaintiffs gave it notice of their claims and insisted that they were entitled to ten-twelfths of the gas produced, and demanded that they be permitted to enjoy their rights, which was refused, and thereupon this action was brought to restrain the company from appropriating to itself, to the exclusion of the plaintiffs, the well and its products, and to recover their respective interests in the property, with damages for the exclusion. The corporation alone answered.

*E. C. Sprague* for appellants. An "oil lease," by whose terms the lessor retains the right of possession of the land described, excepting such possession as is incident to the production of the fluids described in the lease, although usually denominated a "lease," is in legal effect nothing more than a "license" to enter upon the lessor's land to search for oil or other fluids mentioned in the lease upon the conditions expressed in the instrument, and is to be governed by the rules of law applicable to licenses. (*Funk* v. *Haldeman*, 53 Penn. St. 229; *U. P. Co.* v. *B. P. Co.*, 72 id. 173; *Grubb* v. *Grubb*, 74 id. 25; *Thompson's Appeal*, 101 id. 225; *Shepherd* v. *M. O. Co.*, 38 Hun, 37; *Dark* v. *Johnston*, 55 id. 164.) There are certain facts and customs in the mining of petroleum which are so uniform and notorious that the court will take judicial notice of them. (*Munroe* v. *Armstrong*, 96 Penn. St. 307, 310; *Brown* v. *Vandergrift*, 80 id. 142.) Where the lessee fails to develop the property as provided by the lease, the lease is forfeited without any notice or proceeding by the lessor; and alienation by the lessor to a third person is in legal effect a sufficient declaration of forfeiture. (*Munroe* v. *Armstrong*, 96 Penn. St. 307; *A. O. Co.* v. *B. O. Co.*, 21 Hun, 26; 86 N. Y. 638; *Shepherd* v. *M. O. Co.*, 38 Hun, 37; *Brown* v. *Vandergrift*, 80 Penn. St. 142.) The referee, as

well as the General Term, was right in holding that the lease was forfeited, and that the lease to Thurston transferred the property therein described free from all claim under the prior lease. (4 Kent's Comm. 74; *Boisaubin* v. *Reed*, 2 Keyes, 323; *Kellam* v. *McKinstry*, 69 N. Y. 264; *Parmalee* v. *O. & S. R. R. Co.*, 2 Seld. 74; *Taylor* v. *Millard*, 28 N. Y. S. R. 694, 697; *Giles* v. *Austin*, 62 N. Y. 486; 24 Moak's Eng. Cas. 573; 4 R. S. [8th ed.] 2459, §§ 23, 24, 25; *Van Rensselaer* v. *Slingerland*, 26 N. Y. 580.) The referee was right in dismissing the complaint. (*Middlebrook* v. *Corwin*, 15 Wend. 170; *Forbes* v. *Shattuck*, 22 Barb. 573; *Searles* v. *Searles*, 3 Sandf. Ch. 606; *Drury* v. *Molins*, 6 Ves. 327; *Hutton* v. *Warner*, 1 M. & W. 466; 1 Taylor's L. & T. §§ 420, 421; *Earl of Shrewsbury* v. *Gould*, 2 B. & Ald: 487; *Webb* v. *Plummer*, Id. 746; *Koch's Appeal*, 93 Penn. St. 434, 442; *Brainerd* v. *Arnold*, 27 Conn. 617; *Sharp* v. *Wright*, 21 Beav. 150; *Southcomb* v. *Bishop of Exeter*, 6 Hare, 213.) The construction by the referee of the clause providing for the commencement and prosecution of operations was correct. (*Slosson* v. *Beadle*, 7 Johns. 72; *Gray* v. *Crosby*, 18 id. 219; *D. M. Co.* v. *Roeber*, 106 N. Y. 473; *Long* v. *Bowring*, 33 Beav. 585; *P. Ins. Co.* v. *C. Ins. Co.*, 87 N. Y. 400; *Dodge* v. *St. John*, 96 id. 260; *Crocker* v. *Crocker*, 5 Hun, 587; *Cronkhite* v. *Cronkhite*, 94 N. Y. 323; *Ketchum* v. *Newman*, 3 N. Y. S. R. 566; *Jamison* v. *Milleman*, 3 Duer, 255; *Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Picket* v. *Dowdall*, 2 Wash. 106; *Koon* v. *Tanner*, 66 Penn. St. 297.) This suit is in substance an action for a specific performance, and the principles of equity applicable to such an action require a dismissal of the complaint. (*Benedict* v. *Lynch*, 1 Johns. Ch. 370; 2 Pars. on Cont. 340; *Wheeler* v. *C. M. Ins. Co.*, 82 N. Y. 543; *Klein* v. *N. Y. L. Ins. Co.*, 104 U. S. 88.)

*Rufus Scott* for respondents. The true construction of this lease is, that the lessees were to have " the exclusive right to dig, mine and bore for and gather all oil or (and) gases found in and upon said premises " for twelve years. If, at the end

of that period, oil was being found in paying quantities, that right was to continue " as long as oil is found in paying quantities." (6 Johns. 54; 1 Wend. 389; 19 N. Y. 364; 24 id. 463; 34 id. 172; 22 Wkly. Dig. 260; 39 Barb. 42; 3 Cow. 284; 84 N. Y. 386; Wood on Landl. & Ten. 450.) The referee's conclusion of law "that the demise by said Harvey C. Foster to said Thurston and the possession so taken under the lease operated as an election by the said Foster and his assigns to declare the plaintiff's said lease or license forfeited for such failure" is erroneous. (45 Miss. 359; 20 Barb. 443; 1 Miss. 109; 9 Mass. 501; 7 Pick. 3.) There can be no abandonment of real estate except such non-user or occupation by others as establishes adverse right. (1 U. S. Dig. 1; *Pickett* v. *Dougall*, 2 Wash. 106; *Bunting* v. *Young*, 5 W. & S. 138; *Philadelphia* v. *Riddle*, 25 Penn. St. 259.)

FOLLETT, Ch. J. It is conceded that the parties of the second part to the contract dated April 27, 1881, performed their covenants in respect to the time in which they should commence operations for mining purposes, and that they sank the well to the required depth within the time limited.

Whether the lease (so called for convenience) created a term for twelve years, or whether the term granted is limited to the time during which oil should be produced in paying quantities, is the question upon which the decision of this case turns.

This contract is called a lease, but it should be borne in mind that nothing is granted by it except the oil and gases found in the land described, together with the incidental rights to use the premises for the purpose of obtaining and removing those products, and that no rent or compensation is to be paid unless oil be found in paying quantities, in which case the lessor is to be compensated in kind. Had neither gas nor oil been found, it would not have been contended that the lessees would have a right to occupy the premises for the full term of twelve years without rent.

Undoubtedly the lessees had the right of possession so long as they, in good faith, were engaged in boring wells or testing

the oil-producing capacity of the land. But when it was demonstrated that oil could not be obtained, or when they should abandon their search, their right to possess the property would end and thereafter they would have no more right to occupy it than a stranger.

Construing all of the provisions of the instrument together and keeping in mind the evident purpose of the parties, we think the term created by the lease was limited to the time during which oil should be found in the quantities mentioned, and that the term, " or as long as oil is found in paying quantities," are words of limitation and fix the duration of the lease.

The lessees having tested the premises to their satisfaction and having for two years ceased to use them for the purposes granted, it was well held by the learned referee that the contract might be, and was, legally terminated by the lessor.

The order should be reversed, and the judgment entered upon the report of the referee should be affirmed, with costs.

All concur, except Bradley and Haight, JJ., not sitting.

Order reversed and judgment affirmed.