(127 App. Div. 761.)

CONKLING v. KRANDUSKY.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1908.)

1. MINES AND MINERALS—OIL LEASES—ABANDONMENT—EVIDENCE—QUESTION FOR JURY.

The owner of land in 1893 executed an oil lease thereof to G., for the term of 15 years or as long as oil should be found in paying quantities. G., in pursuance of the terms of the lease, drilled a well and finished it in 1894, but found no oil in paying quantities, and in the same year took away his machinery and rigging used in drilling, leaving only the casing in the well, and did nothing further in the matter until 1905, after the owner, in 1904, had executed another oil lease of the land to plaintiff, when G. put down another well on the premises. Held, that the evidence showed as a matter of law that G. had abandoned his lease before the execution of the lease to plaintiff.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mines and Minerals, § 204.]

2. SAME—ABANDONMENT OR FORFEITURE.

Where an oil lease is executed for a term of 15 years, or as long as oil is found in paying quantites, and the lessee, after drilling a well and failing to find oil in paying quantities, removes his machinery from the premises and does nothing more under the lease for 11 years, the granting of another lease of the same premises is a declaration on the part of the owner that she regards the outstanding lease as terminated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mines and Minerals, § 204.]

3. SAME—RIGHTS AND LIABILITIES OF LESSEE.

An oil lease contained a covenant that the lessee was "to stand all expense of any lawsuit that may occur in defending of said lease." Held, that it was incumbent on the lessee to defend the premises against a prior lessee, and in the event of his failure to do so, on the occupation of the premises by the prior lessee, and the failure to show that the

entry of such prior lessee was authorized by the lessor, or that it would be fruitless to assail the lease, or that the entry was made pursuant to some agreement with the lessor, the lessee cannot recover the consideration paid for his lease, which, it was agreed, was to be repaid to him in the event there was any outstanding lease or contract superseding the lease to him.

4. SAME—CONSTRUCTION.

Oil leases or contracts stand on an entirely different basis from any other leasehold agreements, as the work which is to be done is ordinarily experimental and speculative, and, if oil is not found, no estate vests in the lessee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mines and Minerals, § 201.]

5. SAME—ABANDONMENT OR FORFEITURE.

The rule that forfeiture or abandonment is not looked upon with favor is not applicable to oil leases.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mines and Minerals, § 204.]

6. SAME.

An oil lease provided that the lessee should begin operations at a specified time, or, in lieu thereof, pay a rental of $10 per month from that date, with the option at any time to surrender his lease and be released from all unfulfilled conditions. The lessee failed to commence operations at the time specified, and paid the first month's rental of $10, but thereafter for more than two months he ceased to pay and made no attempt to bore for oil. *Held* that, as in the lease time was the controlling factor, the failure to enter the premises or to pay the $10 per month was an abandonment of the lease.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mines and Minerals, § 204.]

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Trial Term, Cattaraugus County.

Action by Robert Conkling against Josephine Krandusky. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

P. S. Collins, for appellant.
M. B. Jewell, for respondent.

SPRING, J. On the 1st day of November, 1904, the defendant was the owner of a farm situate in the town of Allegany, Cattaraugus county. On that day, by an instrument commonly known as an "oil lease," she leased to the plaintiff, in consideration of the sum of $100, which was on that day paid to her, the right to operate and drill for petroleum and gas upon said premises "for and during the term of five years from the date hereof, and so long thereafter as oil and gas can be produced in paying quantities." By the terms of the contract the defendant was to receive one-eighth part of all the petroleum which was produced. The agreement further provided that the lessee was to commence operations by April 1, 1905, or, in lieu thereof, was to pay a rental of $10 per month from that date. The instrument contained the covenant that the plaintiff was "to stand all ex-

pense of any lawsuit that may occur in defending of said lease."
There was also this further provision in the lease:

"And it is further agreed that the second party, his heirs or assigns, shall have the right at any time to surrender up this lease, and be released from all moneys due and conditions unfulfilled, then and from that time this lease and agreement shall be null and void and no longer binding on either party, and the payments which shall have been made shall be held by the party of the first part as the full stipulated damages for the nonfulfillment of the foregoing contract."

Contemporaneously with the execution of this contract the defendant executed a written instrument whereby she agreed to repay to the plaintiff said sum of $100 in case there was any outstanding lease or contract superseding the lease to the plaintiff; and she further represented in said instrument that there was no such outstanding lease or incumbrance. The plaintiff, in pursuance of his contract, paid the rental of $10 for the first month. He paid no further rental after that, nor did he commence operations on the 1st day of April, 1905, or at any other time. He has brought this action, and so far successfully maintained it, to recover said sum of $100 upon the ground that there was in existence a valid lease held by one Galletts.

It appears that on the 28th day of March, 1893, the defendant's husband was the owner of these premises, and on that day he executed an oil lease to said Galletts in consideration of the sum of $130, and by which Galletts was to drill for oil, and in the event that oil was discovered the lessor was to receive one-eighth of the same. This lease was for the term of 15 years from its date, "or as long as oil is found in paying quantities." It further provided that the lease should be null and void unless Galletts should commence to drill a well within three months from the date of the lease, prosecute the same diligently, and bore the same to the depth of 1200 ft., unless oil was sooner found in paying quantities. During the year 1893 Galletts commenced drilling the well in pursuance of this lease, and finished it to the requisite depth in 1894, but found no oil in paying quantities. He paid the lessor $10 a month until the well was completed. Oil not having been discovered, in 1894 Galletts too away his derrick, machinery, and rigging which he had used in drilling the well, leaving only the casing, which had been put in to shut off the water while he was drilling the well. Galletts did nothing further for 11 years and made no claim that his lease was valid. In July, 1905, Galletts entered upon the defendant's farm, put down another well, and found oil in paying quantities. It will be observed that this was 11 years after he had abandoned the premises and more than 8 months after the contract with the plaintiff.

The court submitted to the jury the question for them to determine whether Galletts had abandoned the lease. I think this was error. The facts were not in dispute, and as matter of law the lease had terminated long before the contract made with the plaintiff. When Galletts took away his machinery and all the implements which were necessary for the prosecution of the work under the lease, and after having drilled one well and found no oil, these acts on his part indicated that he had abandoned the project, and this is especially true

when the work was not resumed again for 11 years. In Eaton et al. v. Allegany Gas Company, 122 N. Y. 416, 25 N. E. 981, under a similar lease, the lessees drilled the well, finding gas in large quantities and a small quantity of oil, and in the fall of 1882 they removed from the premises their engine, boiler, and machinery, leaving in place the engine house, derrick, and casing, but did no other work. After that, in 1884, another lease was executed by the owner of the premises to another party, subject to the first lease, "in case the same is not now or does not become forfeited or canceled," and the controversy arose as to the validity of that lease. There was no dispute over the facts. The court held that there was an abandonment of the premises by the first lessees, saying at page 422 et seq. of 122 N. Y. and page 983 of 25 N. E.:

"Undoubtedly the lessees had the right of possession so long as they in good faith were engaged in boring wells or testing the oil-producing capacity of the land. But when it was demonstrated that oil could not be obtained, or when they should abandon their search, their right to possess the property would end, and thereafter they would have no more right to occupy it than a stranger. Construing all of the provisions of the instrument together, and keeping in mind the evident purpose of the parties, we think the term created by the lease was limited to the time during which oil should be found in the quantities mentioned, and that the terms 'or as long as oil is found in paying quantities' are words of limitation and fix the duration of the lease. The lessees having tested the premises to their satisfaction, and having for two years ceased to use them for the purposes granted, it was well held by the learned referee that the contract might be, and was, legally terminated by the lessor."

In these cases time is the essence of the contract. Allegany Oil Co., v. Bradford Oil Co., 21 Hun, 26, 31; Boisauin v. Reed, 2 Keyes, 323. The oil is apt to be drained by the sinking of wells on adjacent premises, so it is important to the owner of land, who is to receive from the lessee as royalty a part of the oil produced, that the work should commence at the time stipulated, in order that whatever oil belongs to his premises may be obtained; and it was important to the lessor in the contract with Galletts that he should make his explorations in conformity with the agreement. The removal of his machinery and long suspension of the drilling indicated his purpose to surrender his rights under the contract. The granting of the lease to the plaintiff was a declaration on the part of the owner that she regarded this outstanding lease as terminated. Sheperd v. McCalmont Oil Co., 38 Hun, 37.

It is contended, however, that because Galletts entered upon the premises after the execution of the contract with the plaintiff and drilled for oil there was no abandonment. The plaintiff could have commenced his action within a month, or at any time, to recover the $1.00, and certainly the Galletts lease would not then have been held to supersede this contract. It does not appear under what arrangement Galletts entered upon the premises and commenced operations again. Undoubtedly the defendant desired to have her premises fully tested, for the discovery of oil in paying quantities would materially enhance the value of her farm. The plaintiff was not making any effort to perform under his contract, and, very naturally, if Galletts

desired to do so, she was not averse to it.   Whether he entered by virtue of the old lease, or upon a new contract, does not appear, although we may assume the entry was under the old lease, as there was no evidence of any other agreement.   She was not required to eject Galletts, for the plaintiff was not complying with the terms of his lease, and he was not defending his title.   He kept quiet until long after Galletts discovered oil in paying quantities.   It was incumbent upon the plaintiff to defend the invasion of the premises by Galletts.   He had undertaken to do that, and there is no claim that he complied with his undertaking.   He did not show that the entry of Galletts was authorized, or that it would be fruitless to attempt to assail the lease, or that Galletts re-entered with the assent of the defendant, or pursuant to some new arrangement with her.   In view of the charge of the court, we assume the jury have found Galletts had not abandoned his lease, and that finding is contrary to the evidence.   A new trial may develop additional facts defining the status of the parties with reference to the resumption of the drilling by Galletts.

Oil leases or contracts stand on an entirely different basis from any other leasehold agreements.   The work which is to be done is ordinarily experimental and speculative.   If oil is not found, no estate vests in the lessee.   Eaton Case, cited supra; Venture Oil Company v. Fretts, 152 Pa. 451, 25 Atl. 732; Kennedy v. Crawford, 138 Pa. 561, 21 Atl. 19.   While, ordinarily, forfeiture or abandonment is not looked upon with favor, that rule is not applicable to these oil leases.   The plaintiff, at the time he entered into the agreement with the defendant and when he paid the $100, knew of the Galletts lease, and that was the instrument which the parties had in mind when the provisions referred to were inserted in their contract.   In effect, the plaintiff agreed, if he entered into possession pursuant to his contract and Galletts or any one else attempted to assert the priority of any other lease, he would defend his own lease, and if the validity of the outstanding lease was established the defendant would repay the $100.   If, however, he elected to do nothing, he would lose what he had paid.   He must keep his own lease alive, either by the monthly payments or by drilling for oil, if the provisions for his benefit were to be operative.   He was an experienced oil operator, and was willing to take a chance on the situation.   He paid the $10 with full knowledge of the Galletts lease, then expecting possibly to go on with the venture.   After that, and more than two months before Galletts entered, he ceased paying and made no attempt to bore for oil.

In this lease time was the controlling factor, and when he failed either to enter the premises or to pay the $10 each month, one or the other of which was essential to keep his right effective, he manifested his purpose to abandon the project.   The Galletts lease was not an outstanding lease in force when the contract was made with the plaintiff, nor did it supersede in the Conkling lease, for the latter had expired before new life was imparted to the Galletts lease.   I think the judgment should be reversed, with costs to the appellant to abide event.

Judgment reversed, and new trial granted, with costs to the appellant to abide the event.

WILLIAMS and ROBSON, JJ., concur.

McLENNAN, P. J. (dissenting). The sole ground for the judgment of reversal about to be made in this case is stated in the opinion of Mr. Justice SPRING. He says:

"The court submitted to the jury the question for them to determine whether Galletts had abandoned the lease. I think this was error. I think as matter of law that the lease had terminated long before the contract made with the plaintiff."

It seems to me that upon all the evidence the question whether Galletts had abandoned the lease executed and delivered to him was a question of fact for the jury, and that the finding that it was not so abandoned should be regarded as final and conclusive. Indeed, the appellant does not contend that such finding is against the weight of evidence, but insists that, accepting all the evidence as true, it establishes abandonment as matter of law, and, as we have seen, such is the view taken by the majority of the court.

On the 9th day of August, 1884, William Krandusky, who was the husband of the defendant, became the owner of the premises described in the complaint and went into possession of the same. His wife, this defendant, resided with him, and continued so to reside with him on the premises, as his wife, and after October 20, 1896, as owner of the premises, William having deeded the same to the defendant on that day, and from that day until the time of the trial she continued to be such owner. On the 28th day of March, 1893, while William Krandusky (defendant's husband) was the owner of the premises, and while she was residing with him upon the premises, he executed a lease of the same to Joseph A. Galletts, giving the lessee the exclusive right to dig, bore, and gather all oil or gases found in and upon said premises for the term of 15 years from the date of said lease, or so long as oil is found in paying quantities. In consideration of such lease, Joseph A. Galletts agreed to pay $130 in cash and agreed to give to the owner of the premises one-eighth part of the oil produced and saved from said premises. It also provided:

"This lease shall be null and void, and at an end, unless said second party shall within three months from this date commence and prosecute with due diligence, unavoidable accidents excepted, the sinking or boring of one well to a depth of 1,200 feet, unless oil in paying quantities is sooner found; and if said second party does not commence in three months from said date he is to pay $10 a month until he does commence."

It was also provided:

"If the party of the second part fails to keep and perform the covenants and agreements by him to be kept and performed, then this lease shall be null and void and surrendered to the party of the first part."

And further:

"It is agreed that the foregoing stipulations and agreements shall apply to and bind the heirs, executors, administrators, and assigns of the respective parties thereto."

Under this lease Galletts entered upon the premises and paid rentals under it 13 or 14 months, and finally drilled a well upon the premises. The well was drilled 1,330 feet deep, and a little oil was found. The derrick was left there for a while, and then was removed. A casing head was put on, and the well closed; the casing being left in the well. Oil was not found at that time in paying quantities, although an abundant supply of gas was found. In July, 1905, Joseph A. Galletts re-entered upon the premises in question, presumably under the lease which he had taken from William Krandusky in March, 1893, and drilled another well, which was completed in July, 1905, and that was found to be a well of 10 or 12 barrels capacity per day. When Galletts re-entered upon the premises, so far as appears, the defendant made no objection, made no protest, and Galletts went there by virtue of the authority given to him by the lease executed by defendant's husband. Under such circumstances, I fail to see how it can be held, as matter of law, that Galletts had abandoned his lease, or that he or the defendant understood he had abandoned the same. Whether or not Galletts forfeited his rights under his lease is very largely a matter of intention of the parties to it, or their assigns. It seems to me that the evidence fully justifies the finding in this case that it was not considered by either Galletts or the defendant that the rights of Galletts under such lease had been abandoned or had been terminated; but, at least, upon all the evidence, it was a question of fact for the jury to determine. If such lease to Galletts had not been abandoned and was still in force, then clearly the defendant made and executed the lease in question to the plaintiff without right or authority, and received from him the $100 which he is seeking to recover in this action without right or consideration.

The case of Eaton v. A. G. Co., 122 N. Y. 416, 25 N. E. 981, I think, is not an authority which sustains appellant's contention. In that case the referee found as matter of fact and upon the evidence in that case that the prior lease had been abandoned and that all the rights of such prior lessee in and to the premises in question had terminated. The court, in its opinion, says, in substance, that under the facts and circumstances of that case:

"It was well held by the learned referee that the contract might be and was legally terminated by the lessor."

The Court of Appeals in that case did not assume to hold that as matter of law the lease there in question had been abandoned and the rights thereunder terminated.

On a fair and impartial charge the jury in this case were asked to pass upon the precise question whether or not, upon all the evidence and under all the circumstances, Galletts had abandoned his rights under the lease. The jury found that he had not, that the acts of the parties were such as to indicate that it was not intended that such abandonment should result, and, therefore, the question as to abandonment was answered by the jury favorably to the respondent's contention. It seems to me that the judgment and order appealed from should be affirmed. The finding of the jury that the rights under the Galletts lease have not been abandoned should be regarded as

final and conclusive upon the parties to this action, and therefore it follows that plaintiff is entitled to recover back the $100 which he paid to the defendant upon the representation made by her that no valid or existing lease was outstanding which affected said premises.

The judgment and order appealed from should be affirmed, with costs.

KRUSE, J., concurs.