## MICHAELS ET AL. *v.* PONTIUS ET AL.

[No. 11,190. Filed December 13, 1922. Rehearing denied April 24, 1923. Transfer denied June 29, 1923. Application to reinstate petition to transfer denied May 13, 1925.]

1. MINES AND MINERALS.—*Long continued cessation of operation of oil wells on leased land may be sufficient evidence of abandonment of lease.*—Cessation of operation of oil wells on leased lands for a considerable period of time, standing alone, may be sufficient to warrant a court in declaring, as a matter of law, that the lease has been abandoned. p. 69.

2. MINES AND MINERALS.—*Facts held to warrant conclusion that oil lease had been abandoned.*—Cessation of operation of oil wells on leased lands for five or six years without giving

the lands any attention except on one casual visit held to warrant conclusion that oil lease had been abandoned. p. 69.

3. FIXTURES.—*Provision in lease that fixtures may be removed "at any time" means within a limited time after expiration of lease.*—A provision in a lease that lessee may remove fixtures "at any time," does not give an unlimited right for removal, but it is limited to a reasonable time after the expiration of the lease. p. 69.

4. FIXTURES.—*Five or six years from abandonment of oil lease held not reasonable time for removal of fixtures.*—Lapse of five or six years after abandonment of oil lease before attempt to remove the fixtures from the leased land held to be unreasonable time for removing fixtures under provision in lease that they could be removed "at any time." p. 69.

5. FIXTURES.—*Fixtures abandoned with an oil lease become the property of the lessor and are not subject to seizure by others.*—Fixtures abandoned with an oil lease become the property of the lessor and are not subject to seizure as abandoned property. p. 71.

6. FIXTURES.—*Lessor of oil land has inchoate right to fixtures installed thereon by lessee superior to any right of trespasser.*—The lessor of oil lands has an inchoate right in the fixtures installed thereon by the lessee in prospecting for oil and in operating oil wells thereon, which is superior to that of a trespasser or another who has taken possession of them. p. 72.

From Jay Circuit Court; *E. E. McGriff*, Judge.

Action by Homer Pontius and another against Elizabeth Michaels and others. From a judgment for plaintiffs, the defendants appeal. *Reversed*. By the first division.

*S. A. D. Whipple, Roscoe D. Wheat* and *Elmer E. Stevenson*, for appellants.

*Moran & Gillespie*, for appellees.

BATMAN, J.—Action in replevin by appellees against appellants to recover the possession of certain tubing, rods, casing, pipes and other oil well equipment. The issues were formed by a complaint and an answer in general denial. A trial by a jury resulted in a verdict and judgment in favor of appellees. Appellants filed a motion for a new trial which was overruled, and this

action of the court constitutes the only error properly assigned on appeal. Appellees seek to avoid a consideration of this appeal on its merits on account of certain facts shown by the record, and the failure of appellants to comply with the rules in the preparation of their brief, but an examination discloses that at least one of the objections is not well taken, and none of the remaining ones is of so serious a nature as to require us to sustain appellees' contention.

Appellants contend that the verdict is not sustained by sufficient evidence, and is contrary to law. The undisputed evidence shows, that William Michaels, at the time of his death, on January 12, 1920, was the owner of certain land in Jay county, Indiana, on which the J. E. Clark Oil Company had theretofore acquired a written lease, bearing date of September 7, 1904, granting it and its successors and assigns, the exclusive right of drilling and operating for oil and gas for a period of five years from the date thereof, "and as much longer as oil or gas is found or produced in paying quantities thereon," and providing that the lessee should have "the right to remove any machinery, fixtures or buildings placed on said premises by the party of the second part (the lessee) at any time"; that said oil company drilled two wells on said land, placed certain equipment thereon for use in connection therewith, and operated the same, with intervals of suspension, for several years prior to 1914 or 1915, when such operation ceased, and has never been resumed; that one Joseph E. Clark held a controlling interest in said company, and had charge of its affairs, including the operation of the wells on said land under said lease; that soon after said company ceased to operate said wells, the said Joseph E. Clark moved to a foreign state, where he died; that a short time before he moved from this state, he visited said land and "looked at things and saw how things

were," but did nothing further with reference thereto. The record discloses that the property in controversy consists of certain equipment placed on said land by said company in drilling and operating said wells; that appellants base their right of possession on the ownership of said Michaels to which they claim to have succeeded, while appellees base their right of possession, which they first sought to exercise by a removal of the property in January, 1920, on the ownership by said company, to which they claim to have succeeded by purchase, made subsequent to September, 1919.

Assuming, without deciding, that the evidence shows that appellees have succeeded to any rights which said company may have to the property in suit, we will proceed to determine whether there is any evidence to sustain a finding that the lease in question was still in force when this action was commenced in March, 1920, for if it was, then clearly the company or those rightfully claiming through it, had a right to remove the property, and, under the assumption stated, the judgment must be affirmed. It will be observed that the time for the termination of the lease was indefinite, as, by its terms, it did not necessarily end with the five year period specified, but was to continue as much longer as oil or gas was found or produced in paying quantities. The evidence discloses that, by reason of this provision, it was, in fact, extended beyond such period. The lease might have been terminated by a voluntary surrender of the same, but there is no claim that this was done. It is contended, however, that the lessee abandoned the same, and thereby brought it to a termination long prior to the time appellees sought to take possession of the property. We will, therefore, proceed to consider this contention, but, before it can be given effect on appeal we must find that the undisputed evidence admits of no

other conclusion. It has been held that cessation of operations for a considerable period of time, standing alone, may be sufficient to warrant a court in declaring, as a matter of law, that a lease has been abandoned, if unexplained. *Strange* v. *Hicks* (1920), 78 Okla. 1, 188 Pac. 347; *Aye* v. *Philadelphia Co.* (1899), 193 Pa. 451, 44 Atl. 555, 74 Am. St. 696; *Calhoon* v. *Neely* (1901), 201 Pa. 97, 50 Atl. 967; *Conkling* v. *Krandusky* (1908), 112 N. Y. Supp. 13, 127 App. Div. 761; 1 Thornton, Oil & Gas 251; Morrison, Oil & Gas 110. Such a declaration is the only action open to a court where the circumstances attending the continued cessation of operations, when considered in connection therewith, permit of no other reasonable conclusion. In the instant case, the undisputed facts stated above show a final cessation of operations five or six years prior to the commencement of this action. This significant fact stands unexplained, as far as we have been able to discover, except on the theory that the wells had ceased to produce oil in paying quantities. There is no evidence that after such cessation, the lessee, or anyone on its behalf, or claiming through it, made any test of said wells to learn if the flow of oil had commenced again, or increased in quantity, or did any further prospecting thereon in the way of drilling or otherwise, or that anyone so acting ever gave the land covered by the lease, or the property thereon, any further attention in any manner or for any purpose, until appellees attempted to take possession of the property in suit in January, 1920, except the single act of the said Joseph E. Clark in what may well be considered a farewell visit to the leased premises just before he departed to take up his residence in a foreign state, as above stated. These facts, when considered as a whole, lead irresistibly to but one conclusion, viz.: That the company had abandoned the lease in question at the

time, or soon after it ceased to operate the wells drilled thereon, and therefore such lease had been fully terminated, and was without effect, when appellees sought to acquire title to the property in suit, unless it can be said that its terms gave them the right, as purchasers thereof, to take possession of the same, notwithstanding the abandonment of the lease. Appellees call our attention to the fact that the lease provides that the company should have the right to remove any machinery, fixtures or buildings placed on said premises by it "at any time," and assert that they are within their rights, in seeking to obtain possession of the property in suit, by reason of this provision. This court has held that such a right is not unlimited as to time, but is limited to a reasonable time after the expiration of the lease. *Perry* v. *Acme Oil Co.* (1909), 44 Ind. App. 207. The undisputed evidence establishes facts which show that such time had expired long prior to the date on which appellees claim to have acquired title to such property, and hence the provision cited is not available to them. This is in harmony with the decision reached by the court in the well-considered case of *Shellar* v. *Shivers* (1895), 171 Pa. 569, 33 Atl. 95. Having reached the conclusion that the undisputed evidence shows that the lease had been terminated by abandonment, and that the property in suit had not been removed within a reasonable time thereafter, we must hold that the lessee, and anyone claiming through it, has lost all rights thereto. We, therefore, conclude that the verdict is not sustained by the evidence.

Appellees contend, among other things, that if the property in suit was abandoned property when they seized it, then it was thereafter no longer abandoned, and appellees' right of possession would be superior to that of appellants. The evidence, however, does not show that the property was aban-

doned in a sense that would give appellees' contention effect. True, the lessee in abandoning its lease, and failing to remove its property therefrom within a reasonable time thereafter, thereby abandoned such property, but it did not, by reason of that fact, become the property of the first who seized it, but became the property of the owner of the land which had been covered by the lease, and on which it was located. Archer, Oil & Gas 150 and 163; 1 Thornton, Oil & Gas 349; *Shellar* v. *Shivers, supra.*

Appellees, assuming that there was no abandonment of the lease in question by the oil company, further contend that it was unnecessary for them to trace

6. their title to the property in suit to a proper source, as their possession under a claim of title, will be protected as against appellants, since they have no better title. We cannot sustain this contention. The property in question, having been placed on the leased premises in prospecting for oil, and operating the wells drilled thereon, gave the owner of the land covered by the lease an inchoate right therein. If the lease is still in force, this right may be terminated by a removal of the property from the premises before the expiration thereof, or within a reasonable time thereafter, by the lessee, or some one deriving a right to do so from it, but if this is not done, it will ripen into a vested right. The owner of the land, therefore, has an interest in preserving the property, which gives him and those claiming through him, a right of possession as against mere trespassers, who may seek to convert the same to their own use, and thereby render such inchoate right valueless. It follows, even on appellees' assumption as to the continued existence of the lease, that before they could recover, it was necessary that they show a valid title to the property in themselves, derived in some legal manner, either directly or indirectly from

the lessee. Other contentions made by appellees, in an effort to lead the court to a different conclusion from that announced, need not be separately considered, as they are sufficiently covered by what we have already said in determining the controlling question in this appeal.

Appellants have presented other alleged errors, which we do not feel justified in considering, as they may not arise on another trial, in view of what we have said in reaching the conclusion announced. For the reasons stated, the judgment is reversed with instructions to sustain appellants' motion for a new trial, and for further proceedings consistent with this opinion.