SMITH ET AL. *v.* MESEL

[No. 17,812. Filed March 11, 1949. Rehearing denied April 28, 1949. Transfer denied June 29, 1949.]

324

*J. Gordon Meeker;* and *Moran & Abromson,* all of Portland, for appellants.

*Roscoe D. Wheat* and *James W. Grimes,* both of Portland; and *James C. Jay,* of Indianapolis, for appellee.

DRAPER, J.—The appellee Mesel brought this action in replevin and conversion against the appellants Smith and Archer. The court found the facts specially, stated conclusions of law thereon, and rendered judgment for appellee in the sum of $1,617.50.

Of the errors assigned, the appellants have briefed only the proposition that the court erred in overruling their motion for new trial, which asserts the finding is not sustained by sufficient evidence and is contrary to law. Other assigned errors are therefore waived. Rule 2-17(f).

The appellants are entitled to have this court determine (1) whether among the special findings there is one which is essential to the decision made by the court which is not supported by any evidence, or inferences reasonably to be drawn therefrom, and (2) whether the undisputed evidence establishes a controlling fact within the issues which is not found, but which if found, would necessitate

different conclusions of law and a different judgment based thereon. *Central Pharmacal Co.* v. *Salb* (1938), 106 Ind. App. 495, 13 N. E. 2d 875; *Treesh* v. *DeVeny* (1945), 116 Ind. App. 305, 64 N. E. 2d 41; *Boyer* v. *Leas et al.* (1946), 116 Ind. App. 502, 64 N. E. 2d 38, 64 N. E. 2d 591.

We condense the findings as follows: On and before April 17, 1942, Indiana Truck Farm Company owned a farm in Lake County. Through some arrangement, the details of which are not disclosed by the evidence, a concern known as Bonded Oil Company acquired the right to drill an oil well on said land, and it employed the appellee to furnish all the equipment, machinery, pipe and labor for the drilling of such well.

Pursuant to that arrangement the appellee took said equipment, including the pipe in question, to the farm and commenced the drilling of the well, which was continued through 1942, 1943 and 1944. The shaft was sunk approximately 2,000 feet into the ground, but said well proved to be unproductive.

Upon discovery of that fact, Indiana Truck Farm Company requested the appellee to remove his property and equipment from said land. He removed the above ground equipment late in the summer of 1944, but was unable to remove the pipe because he was not equipped to pull it himself and he was unable to hire anyone else to do it for him.

One Duncan purchased the land from Indiana Truck Farm Company in 1945 and took title thereto by a deed which contained no reservation of said pipe or on account of said well. Previous to purchasing and taking title to said land Duncan did not examine the public records of Lake County, nor did anyone make such examination on his behalf, nor did he receive any abstract of title for said land. During the time the well was being drilled Duncan observed the drilling

operations and knew a well was being drilled on said land, and after the machinery and equipment were removed the casing protruded from said well about 2½ feet above the level of the ground, and Duncan saw the same and knew what it was before he bought the land and knew it was there when he took title to the land and entered into possession thereof.

In July 1946 the appellee employed Archer to pull the pipe from said well. He employed Smith to haul the pipe away after the same had been pulled, and he paid Archer $200 and Smith $25 on account of the services to be rendered. Smith and Archer proceeded to the land and undertook to pull the pipe, but Duncan, who knew Smith and Archer were in the employ of the appellee, refused to permit the removal of the pipe because he claimed ownership of it in himself. Smith and Archer returned to their homes, the appellee informing them he would get the matter adjusted so they could return and pull the pipe.

About three months later, pursuant to a call from Duncan, and without the knowledge or consent of the appellee, Smith and Archer went to Lake County and negotiated with Duncan concerning the pipe, and as a result pulled the pipe, paid Duncan $750 for it and received a bill of sale.

Smith hauled the pipe away and sold it. The removal and sale of the pipe was without the knowledge or consent of the appellee. The appellants refused appellee's demand for the pipe. The pipe after removal was of the fair market value of $1,617.50.

As we understand them, the appellants first complain of the court's finding with reference to notice. They say the court's failure to find there was a written lease of record is equivalent to a finding that there was none of record; and they complain of the finding that the public records were not examined by or for

Duncan, and that Duncan received no abstract of title for the land, because the evidence reveals without dispute that Duncan's attorney obtained a letter of opinion upon which a guaranty policy was later issued, and no lease of record was shown in those papers.

In the light of the other facts, we do not believe the absence of a lease of record is of controlling importance. The evidence discloses the well was drilled on what was called the "Williams lease."

It further shows the appellee, under his original agreement with Bonded Oil Company, retained the right to remove the pipe. It seems to be the rule that machinery and fixtures, including pipe, placed on real estate leased for the purpose of drilling for gas and oil, do not become permanent fixtures, nor parts of the freehold, particularly where the well is unproductive. *Perry* v. *Acme Oil Co.* (1909), 44 Ind. App. 207, 88 N. E. 859; *Michaels* v. *Pontius* (1925), 83 Ind. App. 66, 137 N. E. 579; 24 Am. Jur., p. 577, § 68; III Summers, *Oil & Gas,* § 526 (Perm. Ed.); *Moore* v. *Carey* (Tex., 1925), 269 S. W. 75, 39 A. L. R. 1247, and decisions listed as supplemental thereto in A. L. R. Blue Book.

Duncan testified he paid a certain price per · acre for the farm; that he paid nothing for the pipe and did not know the pipe was there when he bought the land. He did, however, know the well was being drilled; he saw 2½ feet of pipe projecting from the ground after drilling operations were completed and after the drilling equipment was removed. Under these admitted facts we think he was chargeable with knowledge that there was pipe in a recently drilled, unproductive well on the land he bought.

He was chargeable with knowledge that pipe placed on real estate leased for the purpose of drilling for

oil does not become a permanent fixture or part of the freehold. That knowledge, together with the fact that he paid nothing for the pipe was sufficient, we think, to put him upon inquiry despite the absence of any recorded lease and he was, therefore, chargeable with knowledge of all the facts which an inquiry conducted with reasonable care and diligence would have disclosed, including such as he might have obtained from his grantor, who did not claim to own the pipe, but on the contrary notified the appellee to remove it.

As above stated, the court found the value of the pipe after removal from the ground to be $1,617.50. Evidence was introduced which tended to show the value of the pipe in the ground before removal, but such fact was not found. The appellants insist this was a controlling fact which, if found, would necessitate different conclusions of law and a different judgment. They concede the general rule to be that one who takes property with knowledge that it has been wrongfully appropriated is entitled to no deduction or allowance for enhancement in the value of the property taken; but they claim the benefit of the rule that where property is converted by mistake or under an honest, though mistaken belief of right, the defendant is liable in trover only for its value before he bestowed labor or expense upon it, and the owner can recover only the value of his property in its new form, less the expense incurred in increasing its value.

The evidence discloses the appellants were experienced in the matter of oil wells, casing and drive pipe. They knew the appellee had driven the well and knew he claimed ownership of the pipe and that he was trying to get it. They had received

part of their fees for services and were to await his further advice concerning the pulling and hauling of it. Without hearing from him and without notifying him, they pulled, bought and disposed of it, and kept the proceeds. They owed the appellee the duty of loyalty and fidelity. They could not rightfully acquire an interest in the property antagonistic to that of the appellee, and their efforts to do so were incompatible with the requirements of good faith. In our opinion they do not fall within the rule they seek to invoke.

We conclude the appellants were not entitled to any deduction or allowance for the cost of pulling and moving the pipe, and a finding as to the value of the pipe in the ground was therefore not a controlling fact which should have been found by the court.

Judgment affirmed.

NOTE.—Reported in 84 N. E. 2d 477.