TIMOTHY COLLINS *et ux., Appellees,* v. THE MOUNT
PLEASANT OIL AND GAS COMPANY, *Appellant.*

No. 17,201.

SYLLABUS BY THE COURT.

1. LEASE—*Oil-and-gas Land—Non-user—Cancellation.* In an oil
lease the lessors granted to the lessees the exclusive right,
for five years, to enter upon a tract of land and drill for oil,
for which a small cash consideration was paid, and the lessees
were to deliver, in tanks, to the lessors, one-eighth of the oil
produced, and it was provided that if oil in paying quantities
was discovered the right of the lessees to operate should con-
tinue as long as it was found in paying quantities, and when
abandoned for such purposes the grant should cease and be
no longer binding on either party. The lessees drilled five
wells, in which oil was found, and cased them, but the lessees
claimed that the prevailing prices of oil of the kind and
quality found did not warrant operation, and so the wells were
capped and no oil was ever pumped from them. In this
action, begun more than five years after the execution of the
lease, it is held that the lessors were entitled to a cancellation
of the lease.

2. —— *Right of Lessee to Remove Machinery and Fixtures.*
In the lease was a provision giving the lessees the right to
remove any machinery and fixtures which it might place on
the premises. Under this provision it is held that the lessees
are entitled to remove the casing which it placed in the wells
drilled and which it found could not be operated with profit.

Appeal from Woodson district court. Opinion filed
October 7, 1911. Modified.

*Leonard S. Ferry, Thomas F. Doran, John S. Dean,*
and *Lamb & Hogueland,* for the appellant.

*J. C. Culver,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to set aside an
oil-and-gas lease which Timothy Collins and his wife
executed and delivered to E. T. Browning and H. A.
Cartwright on March 23, 1904. The lease was duly

assigned to the Mount Pleasant Oil and Gas Company, the appellant herein. Some of the substantial terms of the lease were that, on the payment of $160, the lessees should have the exclusive right, for five years from the date thereof, to enter upon the leased lands, consisting of 160 acres, and drill and operate for oil and gas; that the lessees should deliver to the lessors, in tanks, at the wells, without cost, one-eighth of all oil produced on the premises, and, also, to purchase it at the market price if the lessors should so desire. It was also stipulated that "if oil and gas be found in paying quantities in any well drilled the privilege of operating shall continue as long as oil or gas shall be produced in paying quantities, and when abandoned for such purposes this grant shall cease and no longer be binding on either party"; and that the lessees should have the right to remove any machinery or fixtures placed on the premises by them. There was another provision that "this lease shall become absolutely null and void after one year, unless the second parties shall commence drilling a well within that period, or pay, in lieu thereof, an annual cash rent of $160, commencing on March 23, 1905, to be deposited in Yates Center National Bank, at Yates Center, Kan., and if no drilling is done within five years from date of this lease, the second parties agree to release same of record, and the first parties to retain the cash payment named herein as liquidated damages."

During the interim between the date of the lease, March 23, 1904, and the following October, the appellant drilled five wells on the leased land, all of which showed oil, were shot, cased, and capped, but no oil was ever pumped or taken from them. In the month of October, 1904, all tools, derricks and drilling appliances were removed from the land and no further work of development or operation has been done. The cost to appellant, the lessee, of sinking the five wells was

about $8000 and for which it received no returns, inasmuch as no oil was ever pumped or sold.

This action was commenced on April 15, 1909, five years and twenty-two days after the date of the lease, and four years and five months after the work of drilling had ceased and the derricks and tools were removed from the premises. The petition sets out the above facts and alleges that the lease is void by reason of its having expired; that its terms and conditions were broken and not complied with by appellant; that appellant has abandoned the premises in that no drilling or further operation of any kind had been done for about four years and six months; that no gas was discovered; that some oil was found but not in paying quantities; that if the wells contained oil when drilled they have, by reason of appellant's failure to operate them, become ruined and exhausted on account of the proximity of continually operated wells on adjoining lands with the necessary resulting drainage of the oil from under appellees' land. It was finally alleged that the gas-and-oil lease in question, being a matter of record, was a cloud upon the title and a hindrance to the sale or further leasing of the land, and the prayer was that the lease be declared null and void and that the appellant, or any one claiming under it, be perpetually enjoined and barred from setting up or asserting any interest, claim, estate or property in or to the land adverse to appellees.

The answer admitted the substantial facts as set forth above, and further alleged that each well, when pumped, would produce five barrels of oil per day, but that at the time of the completion of the wells there had been a general slump in oil all over the country, when all development ceased, and it became impossible to operate the wells on a paying basis; that it had diligently endeavored to find a market for the oil and to procure the building of a pipe line into the territory but had been unable to do so, and that, under the cir-

cumstances, the production of oil from the wells would have been without profit to either party. It asked that the lease should not be canceled, and if it should be held that it had failed in not digging other wells that its equitable rights be protected by a segregation to its use of the land occupied by the wells which it had dug, or, at least, that it be allowed to go upon the land and remove the casing from the wells and thus recover a part of its investment.

The reply was a general denial, and the issues were tried to the court, which, upon the testimony, rendered judgment in favor of plaintiffs, declaring the lease void, clearing the cloud from the title and allowing defendant nothing by way of reimbursement for its expenditure of $8000. A motion for a new trial was denied and the defendant appealed.

Two provisions are found in the lease relating to forfeiture but only one of them has any bearing on this controversy. The provision that the lease should become void after one year unless the lessee should begin drilling a well within that period is immaterial because of the fact that five wells were drilled within six months after the execution of the lease. The other one, the application of which, it is conceded, ends the rights of appellant, provides that if oil or gas was found in paying quantities the right to operate should continue as long as oil or gas should be produced in paying quantities "and when abandoned for such purposes this grant shall cease and no longer be binding on either party." No gas was ever found on the land and, according to appellees' testimony, oil was never found in paying quantities, and it is contended that, although more than five years has elapsed since the lease was executed, no pumping of oil has ever been done and there has been no production whatever. Now the contract between the parties contemplates that the lessees shall not only explore and discover but that if oil in paying quantities is discovered they shall operate

and produce oil so that the lessors can have their share of the oil produced. It is said in behalf of appellant that the wells would have been profitable if the price of oil had remained where it was when the lease was made, but that it fell from $1.16 per barrel to 28 cents per barrel and that the wells could not have been operated with profit at any time since 1904. The appellant expended a large sum of money in exploration and in casing the wells drilled, and it insists that a cancellation of the lease is inequitable. It is not enough that appellant should explore and find oil but the contract requires it to operate the wells. When the appellant abandoned operations and failed to produce oil in paying quantities its rights under the contract ceased and the lease was no longer binding on either party. Fluctuations in the price of oil might justify the appellant in ceasing operations for a reasonable time, but here there has been no operation and no pumping of the wells to demonstrate what the product of the wells might be. Oil wells have been drilled on adjacent land and some oil has been taken from them, though it does not appear that they have been operated with profit.

In *Howerton v. Gas. Co.*, 81 Kan. 553, 106 Pac. 47, an oil-and-gas lease was under consideration which provided that the lessee should have the right to go upon 179 acres of land, drill, and produce oil or gas on the payment of one dollar, the furnishing of gas to the lessor for domestic purposes, if gas was found in quantities justifying the expense of marketing it, and $50 per year during the time gas should be marketed from each producing well. A producing well was drilled within a year and gas was furnished the lessor for domestic purposes but no oil was marketed from it. No other wells were drilled and the lessor never received anything except the one dollar and gas for his home. Gas wells were drilled on adjacent lands from which some gas was taken and marketed. Four years elapsed after the completion of the well, when the lessor

asked to have the lease canceled, and it was held that the failure to utilize or market gas, or otherwise develop the property, was contrary to the spirit and purpose of the lease and that a delay of more than four years was for an unreasonable time. The decision was modified to the extent of placing the burden of proof on the lessor to show that a recovery of damages was not an adequate remedy for the default of the lessee but the holding as to the default of the lessee and the violation of the contract was not disturbed. (*Howerton v. Gas Co.*, 82 Kan. 367, 108 Pac. 813.)

It is said by appellant that there has been no intentional abandonment of operations under the lease and a hope is expressed that a pipe line may subsequently be built and operation may then become profitable. The best evidence of the intention of the appellant in that respect is its conduct, and its failure to operate for five years is a practical abandonment within the meaning of the contract. The substantial consideration to be received by the appellees for the lease was a share of the oil produced, and if appellant produces no oil no benefit can come to appellees. The appellant did not go so far, even, as to demonstrate, by pumping, what the capacity of the wells was, and to permit it to postpone operations indefinitely, while holding under an exclusive right, is contrary to the spirit and purpose of the contract. Under the provisions of the lease when appellant ceased to operate its rights ceased and appellees were no longer bound by the contract.

While the testimony warranted the court in canceling the lease the appellant is entitled to remove the casing which it placed in the wells. It is provided in the lease that the lessees are given the right to remove any machinery or fixtures which they may place on the land. These terms, when interpreted in the light of the relations between the parties and the other provisions of the lease, indicate the intention to

be that when operations ceased, and the contract was at an end, all the appliances which the lessee placed on or attached to the land, for the purpose of operation, might be removed. If the casing is treated as a mere unattached chattel it may, of course, be removed by its owner, and if it is classed as a fixture it is removable under the terms of the lease. As between these parties, and in this particular case, there can be no doubt of the right of the appellant to remove the casing which it placed in the wells.

It follows that the judgment of the district court canceling the lease and quieting the title of appellees in the land must be affirmed, but it will be modified so as to permit appellant to remove the casing from the wells.