LOUISIANA OIL REFINING CORPORATION *v.* HALTOM.

4-3186

Opinion delivered November 6, 1933.

*Jeff Davis,* for appellant.

*Powell, Smead & Knox* and *Gaughan, Sifford, Godwin & Gaughan,* for appellee.

BUTLER, J. Appellant corporation in January, 1930, completed a small oil well on a certain forty acres of land in Ouachita County, Arkansas, and operated the same until about April 15, 1931. At that time it made an arrangement with one Whittaker to operate the well for the company, which he did until about June 1, 1931, when the well was closed down and its operation abandoned. On August 16, 1932, the appellant entered upon the property to remove the oil well equipment when appellee, G. W. Haltom, forbade it to move the same, claiming it as his own. Appellant thereupon brought this action in replevin to recover the possession of the said equipment, executed its bond, and the property was delivered to it and removed from the premises.

Appellee Haltom filed answer to the complaint denying that the appellant was the owner of the properties mentioned in the complaint, admitted the possession of the same in himself and denied that he unlawfully detained the same. On a trial of the cause there was a judgment in favor of the defendant for the return of the property, or for its value in the sum of $1,435.50, from which judgment is this appeal.

At the conclusion of the testimony in the court below the appellant moved for a directed verdict, and now on appeal insists that the verdict should have been directed in its favor for two reasons.

It is insisted first that the appellant proved that in 1926 it acquired an oil and gas lease on the property upon which the oil well in controversy was later drilled. It placed the material in the well and installed the proper pumping equipment, all of which was the property of the appellant at the time, and it was the same property that it demanded of the appellee, permission to remove which was refused, and the same that is involved in this lawsuit, and therefore, in order for the appellee to be en-

titled to a money judgment against the appellant for the value of the property it obtained under the writ of replevin, it was necessary for him to affirmatively show himself to be the owner of the fee simple title to the land on which the property was located. It is further contended that in neither the pleadings nor proof is there any claim or showing made of such title. It is therefore argued that the property taken may have been handled in such a manner that its identity may have been lost, and, if it should subsequently appear that some other person than appellee was the owner of the fee, appellant might have to pay for the property twice.

There were some others joining in the lease with Haltom to the appellant's predecessor in title. Just what their interest was does not appear from the record, but it seems plain that the title of Haltom was not placed in issue in any way, but that it was conceded that he was the owner. While reference to the ownership of the land in the record is slight, the inference to be drawn from what does appear is that it was Haltom's property upon which the well was located, and in the affidavit made by the appellant to obtain the writ of replevin it was affirmed that "the property was placed upon the premises of G. W. Haltom where the same is now located." It might be also said, in answer to the argument that appellant might have to pay twice for the property, that, the judgment being in the alternative, all that would be necessary for it to avoid the contingency feared would be to return the property, in which event the judgment would be satisfied. The appellant should have anticipated that the judgment might be adverse to it, and therefore, if the identity of the property has been lost so that it cannot be returned, that is to be attributed to the acts of appellant of which it ought not to complain.

The second and serious ground for reversal of the case is "that under the circumstances as disclosed by the testimony the appellant's delay in going upon the leased premises to remove the equipment which constituted its oil well was so clearly not an unreasonable delay that the learned trial court should have so found as a matter of

law." That part of the lease under which the appellant claims the right to remove the oil equipment reads as follows: "Lessee shall have the right at any time to remove all machinery and fixtures placed upon said premises including the right to draw and remove casings." It seems to be the rule, supported by authority and reason, that this clause should be construed so as not to give the lessee an indefinite length of time to remove his equipment after expiration or abandonment of his lease, but that the right reserved to move the equipment must be exercised within a reasonable time, and a failure to do so would result in the forfeiture of the lessee's right in the property which would thereafter be considered as a part of the realty and title thereto vested in the lessor. *Midland Oil Co.,* (1924) C. C. A., 3 Fed. (2d) 112; *Michaels* v. *Pontius,* 83 Ind. App. 66, 137 N. E. 579; *Standard Oil Co.* v. *Barlow,* 141 La. 52, 44 So. 627; *Shellar* v. *Shivers,* 171 Pa. 569, 33 Atl. 95; *Terry* v. *Crosswy,* (Tex.) 264 S. W. 718; *Gartlan* v. *Hickman,* 56 W. Va. 75, 49 S. E. 14, 67 L. R. A. 694; *Bache* v. *Central C. & C. Co.,* 127 Ark. 397, 192 S. W. 225; *Heim* v. *Brock,* 133 Ark. 593, 202 S. W. 36.

As to whether the appellant after June 1, 1931, did any act on or about the oil well to indicate that it had not abandoned the lease, the testimony is in conflict. This question was presented to the jury by appropriate instructions, and learned counsel for the appellant recognizes the rule that where there is substantial testimony to support the finding of the jury it is conclusive on this court. He assumes, and justly so, that under the finding of the jury the lease terminated on the first of June, 1931, and that the appellant did no further act relating to its dominion over the lease, or right thereunder, until August 16, 1932, a period of about fourteen and a half months, but earnestly insists that, under the circumstances disclosed by the testimony, the trial court erred in refusing to hold as a matter of law that the appellant was justified in the delay in removing the equipment from the well on appellee's land.

It was shown that at the time the appellant ceased to operate the well it was making seven barrels per day of the market price of twenty cents per barrel, giving a gross monthly income for all of the oil produced in the amount of $42, while the operating expenses were greatly in excess of that amount. During the entire year of 1931 and 1932 the business of producing oil, in common with all other interests, was laboring under severe economic depression and at no time after June 1, 1931, until the beginning of this suit, did the price of oil improve in the Union County oil field, of which the well in question may be deemed a part, and at the time of the trial in one of the important oil fields of the county all of the wells were shut down because no one would buy the oil and all the storage tanks were filled to capacity. Counsel insist that the appellant did not intend to abandon the lease on June 1, 1931, and that in November, 1931, it obtained permission from the Conservation Department of the State of Arkansas to cement the well at the bottom for the purpose of excluding water from it and for increasing its production of oil. It is pointed out that the well is located in the middle of a cotton field and that the equipment left upon it occupies only a small space of ground so that it could not have been any inconvenience or expense to the appellee, and that to remove the equipment would have been very much more expensive to it than the fair rental value of the small portion of appellee's cotton farm which was occupied, or the damage which might have been sustained to it during the fourteen and a half months of the delay, and, as for the authority for the position taken, we are referred to the cases of *LeCroy* v. *Barney,* 12 Fed. (2d) 363; *Standard Oil Co.* v. *Barlow,* 114 La. 52, 74 So. 627, and *Collins* v. *Mt. Pleasant Oil & Gas Co.,* 85 Kan. 483, 118 Pac. 54. In *LeCroy* v. *Barney,* it was held that a delay of nine or ten months, as a matter of law, was not an unreasonable length of time in which to exercise the privilege under lease for the removal of the equipment. The reason given by the court for its holding was that the petition did not claim nor did the agreed statement of facts disclose that any injury to the plaintiff accrued from his delay.

*Standard Oil Co.* v. *Barlow, supra,* was a suit to enjoin the oil company from removing a casing from a well drilled for oil which proved unprofitable and was abandoned. Eight months later the company was preparing to remove the casing from the well when the action was begun, praying for an injunction to prevent the removal and for damages to the lands of the lessor alleged to have been caused by the drilling and attempted opera-. tion of the well. The case was tried by the district judge who awarded the petitioner damages for injury to his land but denied the prayer for an injunction. In affirming the judgment, the Supreme Court adopted the reasoning of the trial judge by which it reached the conclusion that the facts did not justify a finding that the company had abandoned its property and that it had not delayed beyond a reasonable time in which to exercise the right of removal reserved in its lease.

*Collins* v. *Mt. Pleasant O. & G. Co., supra,* was an action to cancel an oil and gas lease. The answer alleged facts by which the company sought to justify its delay in the operation of the well and to avoid the cancellation of its lease, praying that, in the event the lease should be canceled, it be allowed to remove the casing from the well. An interval of four years elapsed after the completion of the well, and it had been discovered that it was unprofitable to operate. The Supreme Court held upon appeal that the facts proved were sufficient to avoid the lease but not to vest title in the lessor to the casing remaining in the well. There was no evidence of any injury resulting by reason of the delay in removing the casing.

In the first case the decision of the court was grounded, among other things, on the fact that a delay of eight months was not unreasonable when no circumstances were alleged or proved from which any inference of injury caused by the delay could arise. In the last two cases relied upon both appear to have been equitable proceedings, and the appellate courts were not circumscribed, as is this court, where a case comes on appeal based on a determination by a jury of a question

properly for its decision and where there is any substantial evidence which warrants the submission of the question to the jury.

In the instant case we are unwilling to hold, as a matter of law, that the leaving of the derrick and other equipment standing in appellee's cotton field, or the cessation of the well's operation, resulted in no injury or inconvenience to him. Something more than the actual ground occupied must be taken into consideration—the right of ingress and egress to and from the well over the cultivated lands of the appellee. Then, too, there is evidence that just off the lands of the appellee and nearby the well operated by the appellant an oil well was drilled and operated by the Magnolia Petroleum Company which had the effect of draining away a part of the oil from the lands of appellee, so that it was the duty of the appellant to either operate the well itself or to procure its operation for the purpose of protecting the lessor's lands from drainage from the off-set well. Therefore, we are unable to say that no injury was sustained by the appellee because of the actual occupancy of the land and of the continuous operation of the off-set well which, it was shown, had been operated during all the time the appellant's oil well was shut down, and was in operation when this cause was tried. The general rule is that it is a question for the jury to determine from all the facts and circumstances in the case what is a reasonable time in which any act may or may not be done, and therefore, in this case, it was a question for the jury to answer whether the appellant exercised its rights under the lease within a reasonable time. The trial court did not err in so holding, and its judgment must therefore be affirmed.