This is a suit by plaintiff, claiming as owner, for possession of certain equipment described as being two 500 barrel steel oil tanks, one 200 barrel gun barrel, and one Ideco, pumping unit, which equipment plaintiff alleged to be in the possession of Arthur Gray, defendant herein, and to be located on the site of the Gray No. 2 well in Section 34, Township 22 North, Range 16 West, Caddo Parish, Louisiana. A writ of sequestration issued under which the property described was seized.
Plaintiff claims the ownership of the property described by virtue of purchase from one A. Paul Gilbert on February 21, 1947.
Defendant answered, denying plaintiff's ownership, and alleged ownership in himself by reason of Gilbert's abandonment of the equipment which was located on property owned by defendant.
The pertinent facts appear to be as follows:
On September 12, 1941, Arthur Gray, defendant herein, executed an oil and gas lease to A. Paul Gilbert on certain property located in Section 34, Township 22 North, Range 16 West, Caddo Parish, Louisiana, which lease contained the following specific provisions which bear upon the determination of the issues presented herein:
"Lessee agrees to commence operations for the drilling of a well to the Woodbine sand within thirty days from this date and to prosecute the same with reasonable diligence, and this lease shall remain in full force until such well is completed, and as long thereafter as oil, gas or other minerals *Page 650 
are produced thereon from any depth."
"Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by lessee on said land, including the right to draw and remove all casing."
There is a conflict of testimony as to when the production of oil from the Gray lease ceased, thereby effecting a termination of the lease, in accordance with the provisions first above set forth, but it is safe to conclude that the cessation occurred either some time in the latter part of the year 1945 or early in 1946. Be that as it may, it is established that the lessee, Gilbert, pulled casing and removed the same, together with other equipment, from the leased premises during the month of May, 1946.
On June 1, 1946, upon advice of counsel, defendant, Gray, directed a letter to one Finley, described as "pumper for A. Paul Gilbert," which letter contained the following statements:
"You are hereby notified to vacate my property in Section 34, Township 22, Range 16, within 15 days from date hereof as the lease heretofore executed to A. Paul Gilbert has expired and is abandoned. Unless you have removed within 15 days from date of this notice, it will be necessary for me to take necessary legal steps to cause removal."
The addressee of this notice, Finley, testified that he delivered the same to Gilbert, which testimony is uncontradicted. Finley further testified that he removed some personal property from the lease immediately after receipt of this notice. Gray testified, without contradiction, that after receipt of the notice the oil lines and two derricks were removed from the property and that the tubing of the well was pulled and removed.
The property remaining on the lease, which is the object of this suit, was enclosed by a fence, the gates of which were kept locked by Gray.
By deed of sale dated February 21, 1947, on a Texas form, and executed in Smith County, Texas, by Paul Gilbert, the property, involved in this suit was conveyed to H.W. Donnell. Testimony on trial of the case developed the fact that this instrument was originally executed as a conditional sale in the nature of security for money advanced by Donnell to Gilbert and to which the right of redemption attached for a period of ninety days. Upon expiration of this period the sale became final, and, a short time thereafter, Donnell made a trip to the Gray lease, found the equipment enclosed by a fence, the gates of which were locked, made inquiry as to the identity of the lessor, but did not contact him. In July or August of 1947, Donnell returned to the Gray lease, contacted Gray and requested the right to remove the equipment, which request was refused. Subsequently, this suit was filed on August 8, 1947.
The only other question of fact which appears to us to bear upon the issues at hand is found in the testimony of the defendant Gray, to the effect that he had a claim for damages against Gilbert for which no settlement had been made at the time of the abandonment of the lease and the property thereon.
After trial, during which the above facts were developed, there was judgment in favor of plaintiff maintaining the writ of sequestration and decreeing the ownership of the property described to be in plaintiff and ordering the same delivered to him, from which judgment defendant has brought this appeal.
The contention has been made in this Court by counsel for defendant-appellant that the purported instrument of sale executed by Gilbert to the plaintiff, Donnell, was in fact a mortgage, and, further, that there was no sale, in the absence of any delivery of the property.
Since in our opinion the issue as to the abandonment vel non of the property involved herein by Gilbert, the lessee, is of paramount importance and is determinative of the issues presented, we pretermit a consideration and discussion of the above point.
The burden of the defendant's claim of ownership of the equipment on the leased property is based upon the proposition that Gilbert, the lessee, abandoned the property by failing to remove the same within *Page 651 
a reasonable time after the termination of the lease, and that, as a consequence, the defendant, being the lessor and owner of the leased property, thereby became vested with ownership of the abandoned property.
The question posed is one which has perplexed the courts of many jurisdictions almost since the development of operations for the production of oil and gas has become an industry of importance and moment in our economic life.
[1-3] In beginning our consideration of the rights of the parties herein, we take note of three well established principles of law, first, that under the landlord and tenant relationship the law recognizes the right of a tenant to remove fixtures placed upon the leased premises for the enjoyment and use of the tenant which can be removed without damage to the leased property, provided the removal is made at the proper time and in a proper manner; second, that personal property placed upon leased premises by a lessee for use in drilling, developing and operating the lease is considered to be "trade fixtures" which may be removed by the lessee either during the term of the lease or within a reasonable time after the expiration or abandonment thereof; and, third, that the provisions contained in agreements of lease governing the time within which the removal of fixtures shall be permitted are construed as permitting a reasonable time after the expiration or termination of the lease, whether the phraseology employed in the agreement specifically denotes a reasonable time or simply employs the expression "at any time," as is true in the case at hand.
This latter point is well expressed in 39 A.L.R. 1258, and authorities there cited, as follows:
"It seems clear that where a lessee expressly reserves in his lease the right to remove casing, or fixtures generally, he may so remove them within the term of the lease or a reasonable time after its termination; and where he has expressly reserved the right to remove 'at any time', the courts hold a reasonable time is contemplated."
In Louisiana the pronouncement to this effect is definitely stated in Standard Oil Company of Louisiana v. Barlow et al.,141 La. 52, 74 So. 627.
The extreme difficulty encountered by our Courts in adjudicating claims involving the rights of parties disputant to lease equipment arises from the attempt to define with any certainty the phrase "reasonable time."
[4] An interesting but necessarily inconclusive discussion of this matter is found in 19 Tulane Law Review 229. The conclusion of the article makes the further point that the abandonment of property to such extent as to vest title and control in a third party involves two essential elements, namely, an act of abandonment coupled with an intent to abandon.
Unquestionably, as pointed out in the above noted article, the act of abandonment occurs with the expiration or forfeiture of the lease and the leaving of property upon the leased premises, and the intent to abandon is manifested by the failure of a lessee to remove the property within a reasonable time.
This pronouncement as to the act of abandonment and the intent to abandon was well made by Judge Drew as the organ of this Court in Bickham v. Bussa Oil Co., 152 So. 393. The Court held on the facts that agents of the lessee had been engaged in removing property from the lease over an extended period of time up to a date some three or four months prior to the institution of suit, and, accordingly, concluded that the intention to abandon had not been established.
[5] We think one of the points which has contributed to the extreme difficulty in a determination of the question here involved has been due to the tendency on the part of courts, as well as counsel for litigants, to assume that the time element in itself is controlling. Definitely this element is in no sense conclusive, and, in fact, it is not even persuasive unless it be considered in conjunction with an analysis of the facts involved in each individual case. As was said by the Supreme Court of Oklahoma *Page 652 
in Stephens v. Lundy, 172 Okla. 79, 44 P.2d 843, 845:
"What is a 'reasonable time' is to be determined from all the facts and circumstances of each particular case. Under certain facts, a delay of three months might be considered an unreasonable delay on the part of a lessee of an oil and gas lease to remove his property from the leasehold after expiration or termination of the oil and gas lease, while, under certain other facts, a delay of three years might not be considered unreasonable. Time alone is not the determinable factor."
We thoroughly subscribe to the doctrine that the mere lapse of a particular period of time cannot be recognized as the standard or gauge by which a "reasonable time" may be measured.
Counsel for plaintiff has specifically cited certain cases in support of the argument that various periods of time extending up to seven years have not been deemed unreasonable, which citations are quoted as follows from counsel's brief:
"Bickham. v. Bussa. Oil Gas Company, La. App., 152 So. 393 — 3 months;
"Armstrong v. Federal Supply Company, Tex.Civ.App.,17 S.W.2d 170 — one year;
"Hubert v. Collard, Tex.Civ.App., 141 S.W.2d 677 — seventeen months;
"Stephens v. Lundy [172 Okla. 79], 44 P.2d 843 — eighteen months;
"McLeon v. Wells, 1944 [207 Ark. 303] 180 S.W.2d 325 — twelve or thirteen months. (This case held that mere delay, without consequent injury to lessor, does not work a forfeiture);
"Cox v. Miller, Tex.Civ.App., 1944, 184 S.W.2d 323 — three years;
"Lecroy v. Barney [8 Cir.], 12 F.2d 363 — nine or ten months;
"Collins v. Mt. Pleasant Oil and Gas Company [85 Kan. 483], 118 P. 54 [30 L.R.A., N.S., 134] — four years;
"Hoing v. River Valley Gas Company [196 Ark. 1165],121 S.W.2d 513 — seven months;
"Updegraff v. Lesen (Colorado), 167 P. 342 — nine months. [Note: Last cited case should be 15 Colo. App. 297, 62 P. 342.]".
Inasmuch as we are convinced that the facts of each individual case must be taken into consideration in connection with the actual lapse of a period of time, we have examined the cited cases with care and find that they do not bear out the argument advanced.
In the Armstrong case, while it is true that the lease expired on January 10, 1927, and suit was instituted on January 6, 1928, the Court specifically stated [17 S.W.2d 172]:
"The material issue here presented is the title to the casing in place in said well on December 17, 1927, when Heflin advised the plugging of the well and undertook to perform that service."
It is obvious, under the above statement of the issue by the Court itself, that the lapse of time considered did not run for a period of twelve months, that is, from January 10, 1927, to January 6, 1928, but only for a period of one month from December 17, 1927, to January 6, 1928.
Similarly, the facts in the Texas case of Hubert v. Collard, supra, remove it from any analogy to the case before us inasmuch as the well was abandoned in June, 1936, but was not plugged in accordance with the rules of the Railway Commission until July 7, 1937. The Court held, therefore, that the right to remove the casing arose only on July 7, 1937, and not in June of 1936.
In the Oklahoma case of Stephens v. Lundy, to which we made reference supra, the facts showed, in the words of the Court:
"The apparent reason why the casing was not pulled and well plugged before May, 1933, was the possibility of other parties taking it over with a view of making a producing well out of it. The lessors indicated same in their answer."
In the above case the action was begun on the 15th day of May, 1933. The Court called attention to the fact that the notice of termination of the lease, which was caused to be recorded by the lessors in November of 1931, had no bearing upon the ownership of the property located thereon. Quite obviously there was neither an act *Page 653 
of abandonment nor any intent to abandon under the circumstances.
In the Arkansas case of McLeon v. Wells, the lease was abandoned in November or December of 1941. The lessee attempted to remove the equipment in December of 1942, which removal was opposed by the lessor. Again the facts remove this case from any bearing on the matter before us inasmuch as, it was shown that the lessor was receiving an actual benefit in using gas from the well, and that he never asserted any right of ownership until the lessee attempted to remove the equipment.
In the Texas case of Cox v. Miller, cited supra, the question involved the matter of termination of the lease as of September 13, 1939, or September 13, 1942. The facts showed that in the interim the lessee was consistently attempting to find a market which would have made the operation of the well on the leased property profitable through the sale of gas therefrom. The Court very correctly held that in the light of the particular facts the commencement of pulling operations in April, 1943, was within a reasonable time.
In the case of LeCroy v. Barney, cited supra, which arose in Arkansas and was decided by the Federal Circuit Court of Appeals for the Eighth Circuit, the Court based its finding, to the effect that the action in removing casing was not unreasonably delayed because of the lapse of a period of nine or ten months, upon the fact that the procedure for the removal of casing was necessarily in accordance with the rules and regulations of the Conservation Department of the State of Arkansas.
The action in the Kansas case of Collins v. Mt. Pleasant Oil Gas Co., cited supra, sought the cancellation of a lease and a decree of ownership of the equipment in favor of the lessor. The facts were that the lease was for a five-year period and the action for cancellation was instituted five years and 22 days after the date of the lease. The court granted the cancellation but held the lessees entitled to remove the casing from the wells. While it was true that the last of the wells was drilled more than four years before the action was begun, this fact ceased to be material in view of the effective five-year term of the lease.
The Arkansas case of Hoing v. River Valley Gas Co., cited supra, did not involve the question of the removal of fixtures used on leased premises but concerned the removal of personal property stored on the land of another.
In the Colorado case of Updegraff v. Lesen, cited supra, the Court held that a delay extending from the 18th of April, 1891, to the 22nd day of January, 1892, in beginning the removal of heavy mining equipment and buildings, used in connection with the operation of a leased mine, was not unreasonable. In its discussion of this point the court made the following observations [15 Colo. App. 297, 62 P. 346]:
"Now, a reasonable time is not a fixed period. What would be a reasonable time in one case would not be a reasonable time in another; so that in every case the question what is a reasonable time must be determined from facts and circumstances peculiar to that case. The nature of the act to be done, the situation of the parties, a duty or want of duty upon one to act promptly, and the effect of delay upon the rights of the other, must all be considered."
In our attempt to arrive at a determination and construction of what constitutes a reasonable time, we have examined numerous other cases and texts, among which are Southwestern Oil Gas Co. v. Kimball, O. D. Co., Tex.Civ.App.,224 S.W. 1111; Terry v. Crosswy, Tex.Civ.App., 264 S.W. 718; Shellar v. Shivers, 171 Pa. 569, 33 A. 95; Houston T. C. Railway Co. v. Roberts, 101 Tex. 418, 108 S.W. 808; Perry v. Acme Oil Co.,44 Ind. App. 207, 88 N.E. 859; Michaels v. Pontius,83 Ind. App. 66, 137 N.E. 579; Childs v. Hurd, 32 W. Va. 66, 9 S.E. 362; 2 Thornton on Oil and Gas, pages 1342, et seq.; 3 Summers on Oil and Gas, Perm.Ed., § 526; 40 Corpus Juris 1101; 33 Cyc.. pages 1567, 1568.
On the basis of our study of the many authorities on this point we are confirmed in the following conclusions:
(a) That the use of the words "at any time" in a lease agreement in connection with the right of removal of equipment is synonomous with the phrase "a reasonable time," and *Page 654 
(b) That the determination of what constitutes a reasonable time must rest upon the facts involved in each individual case.
Our finding of facts which are pertinent in a determination of the issue tendered by this case are that the lease agreement between the defendant, Gray, as lessor, and A. Paul Gilbert, as lessee, was terminated either in the latter part of 1945 or the early part of 1946; that some equipment was removed at intervals between the early part of 1946 and June of the same year; that a written notice to vacate, which we consider implied the demand to remove the equipment remaining, was conveyed to Gilbert, as lessee, by Gray's letter of June 1, 1946; that after June, 1946, the lessee, Gilbert, made no attempt whatsoever to claim ownership or to remove the equipment remaining on the leased premises; that from June, 1946, until August, 1947, at which time this suit was filed by this plaintiff as assignee of Gilbert, no attempt was made by any party to claim ownership or to remove the equipment remaining on the leased premises.
We think the act of abandonment has been conclusively established, and it is therefore necessary that we proceed to a consideration as to the showing of an intention to abandon.
In connection with the intention to abandon, we think it has been established that some dispute did exist between Gray, the lessor, and Gilbert, the lessee, at the time that Gilbert removed portions of the equipment on the leased premises with respect to damages to the leased property, asserted by Gray to have resulted from the lessee's operations thereon.
It is significant that Gilbert has not appeared in this matter for the purpose of establishing the absence of any intention to abandon the property which he left upon the leased premises. It is further significant that the defendant, Gray, emphatically asserted his ownership and his protection of the equipment on his property through the means of a locked enclosure thereabout.
So far as we can determine from the record, there has been no act on the part of Gilbert since June of 1946 which would negative the presumption of abandonment, and the intention to abandon. It is, of course, asserted on behalf of plaintiff that Gilbert ceased to have an interest in the property after May of 1947 when his right of redemption under the sale agreement of February, 1947, had terminated. We cannot construe this fact as being of sufficient weight to overbalance Gilbert's failure for almost a year to take any steps to assert ownership and to acquire possession of property which he had left under the cloud of a dispute with his lessor and with respect to which he had taken no steps to enforce any right.
In Louisiana Oil Refining Co. v. Haltom, 188 Ark. 117,64 S.W.2d 98, 99, the right of a lessee to replevin equipment on a lease was denied. The lease provided for the removal "at any time." The specific question was considered as to whether the lessee did any act between June 1, 1931, and August 16, 1932, which would indicate he had not abandoned the property and the question was resolved in the negative.
[6] In the instant case we do not consider that the lapse of time in itself is determinative of the issue presented, but we do think that the facts stoutly substantiate the conclusion that there was an actual abandonment, coupled with an intent to abandon, which endured for a period of not less than fourteen months after the partial removal of equipment from the lease by the lessee. This conclusion being considered in connection with the open and consistent actions of the lessor, Gray, in asserting and protecting his rights, we believe requires a reversal of the judgment herein.
Accordingly, it is ordered that the judgment appealed from be and it is annulled, avoided and reversed, and there is now judgment rejecting plaintiff's demands, dissolving the writ of sequestration issued herein, and further decreeing the ownership of the two 500 barrel steel oil tanks, one 200 barrel gun barrel, and one Ideco pumping unit, skid-type, twin-crank, to be vested in Arthur Gray, defendant herein.
It is further ordered and decreed that plaintiff-appellee be taxed with all costs of both Courts. *Page 655 
KENNON, J., dissents, being of the opinion that the District Court was correct in ruling that the lessor had not acquired title to the property placed on the leased premises by the lessee under the provisions of the lease, which provided that the lessee had the privilege of removing his property at any time before or after the expiration of the lease. I agree with the general proposition in the majority opinion that the provision providing that a lessee may remove his property "at any time" must necessarily be interpreted to mean areasonable length of time after the expiration of the lease, but believe that under the finding of fact in the majority opinion, a reasonable time had not expired at the time plaintiff endeavored to remove the property from defendant's premises.