### LE CROY v. BARNEY et al.

### In re HARRY MORRIS GUARANTEED GUSHER SYNDICATE NO. 3.

(Circuit Court of Appeals, Eighth Circuit. April 19, 1926.)

#### No. 7114.

1. **Bankruptcy ⚬═255—Delay of trustee in bankruptcy in removing derrick and casing from forfeited premises held not unreasonable.**

Where oil and gas lease authorized lessee to remove machinery and fixtures without restriction as to time, and, in so doing, it was necessary to proceed in accordance with rules and regulations of state conservation department, delay of lessee's trustee in bankruptcy for nine or ten months after appointment in removing derrick and casing from forfeited leasehold *held* not unreasonable.

2. **Mines and minerals ⚬═73—Earthen storage tank is "structure" within oil lease permitting building of structures, precluding liability for construction thereof.**

An earthen storage tank comes within definition of "structure," so as to preclude liability of lessee to lessor for damages occasioned by construction thereof under oil and gas lease authorizing building of structures.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Structure.]

3. **Mines and minerals ⚬═121—Lessors, under oil and gas mining lease authorizing structures, held not entitled to damages to freehold by reason of cutting of timber to clear ground.**

Lessors, under oil and gas lease authorizing building of tanks, towers, and other structures for care of products, *held* not entitled

to damages to freehold caused by cutting timber in clearing ground for derrick and earthen storage tank for purpose of taking care of products and clearing places where he intended to drill.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

In the matter of the bankruptcy of the Harry Morris Guaranteed Gusher Syndicate No. 3. Intervention by George M. Le Croy for allowance of claim, opposed by H. M. Barney, trustee. From a decree confirming the order of the referee disallowing the claim, intervener appeals. Affirmed.

H. V. Betts, of El Dorado, Ark., for appellant.

Will Steel and A. D. Keeney, both of Texarkana, Ark., for appellees.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge. November 22, 1922, appellant and wife made an oil and gas lease to one David Livingston. December 8th following, Livingston assigned this lease to Harry Morris Guaranteed Gusher Syndicate No. 3. During the month of December, 1922, the said last-named assignee entered upon the leased premises and began the prospecting and developing of the same for oil and gas by means of the usual and customary operations. These operations resulted in failure to produce either oil or gas in commercial and paying quantities, and thereafter, toward the close of January, 1923, the said Harry Morris Guaranteed Gusher Syndicate No. 3 became a bankrupt, and appellee, Barney, was duly elected and qualified as trustee for the administration of the bankrupt estate.

The lease in question provided that the premises were leased for the sole and only purpose of mining and operating for oil and gas, and laying of pipe lines, and of building tanks, towers, stations, and structures thereon to produce, save, and take care of said products. Pursuant to this purpose, the assignee had dug an earthen storage pit for the purpose of saving and taking care of such oil as might be produced, had erected a derrick and had drilled a well in which the usual casing had been placed These operations made it necessary to clear a small portion of the leased premises by cutting and removing a small quantity of timber thereon, agreed to be of the reasonable market value of $10. In October, 1924, the said

trustee had caused said derrick to be removed from the premises, and shortly thereafter was about to enter upon the premises for the purpose of taking out and salvaging the casing from the well that had been drilled. Thereupon appellant intervened in the bankruptcy case, praying the allowance of a claim in the sum of $925 for the value of the derrick and for damages to the freehold alleged to have been sustained by the cutting of the timber and the installation of the storage pit, to which reference has been made. He also asked the court to restrain and enjoin its trustee from further trespassing upon said premises for the purpose of removing the casing as aforesaid. Upon hearing before the referee, this claim was disallowed and the relief prayed denied. The trustee was authorized "to take such action with respect to pulling said casing as he may deem best, and may be authorized by the conservation commission of Arkansas." Upon petition for review, this order of the referee was approved and confirmed by the District Judge. The case before the referee and court was heard upon the following stipulation and agreed statement of facts:

"It is agreed by and between the intervener, George M. Le Croy, and H. M. Barney, trustee of the foregoing estates in bankruptcy, that the intervention of the said George M. Le Croy shall be submitted to the court upon the following agreed statement of facts in relation to said matter:

"(1) That George M. Le Croy is now, and was on the 22d day of November, 1922, the owner in fee simple of the west half of the west half of the southeast quarter of the southwest quarter of section 33, township 15 south, range 16 west, in Union county, Ark., containing 10 acres more or less.

"(2) That on November 22, 1922, said George M. Le Croy and wife executed and delivered to David Livingston their certain oil and gas lease upon the above-described lands, a certified copy of which is hereto attached, marked 'Exhibit A,' and made part hereof.

"(3) That on December 8, 1922, the said Harry Morris Guaranteed Gusher Syndicate No. 3 acquired said oil and gas lease by proper assignment from the said David Livingston.

"(4) That during the month of December, 1922, the said Harry Morris Guaranteed Gusher Syndicate No. 3 entered upon said premises, and began the prospecting and developing of same for oil and gas by means of the usual and customary drilling operations, which drilling operations resulted in

failure to produce either oil or gas in commercial and paying quantities.

"(5) That in furtherance of said operations said Harry Morris Guaranteed Gusher Syndicate No. 3 caused to be erected upon said premises during the month of December, 1922, one 112 foot high drilling derrick, together with an earthen storage pit or reservoir, for use in the preservation and storage of oil expected to be produced from said premises in large quantities.

"(6) That in the erection of said earthen pit or reservoir, and in arranging to drill two additional wells on the north end of said lease (which wells were never drilled) he cleared, cut, removed, and destroyed merchantable timber thereon in the amount of 10,000 feet, of the reasonable cash market value of $10.

"(7) That on or about the 1st day of January, 1923, the said Harry Morris Guaranteed Gusher Syndicate No. 3, having failed to develop oil and gas in paying quantities on said premises, removed all machinery and other personal property therefrom, save and except said derrick and approximately 2,200 feet of oil well casing then in the hole which had been drilled thereupon in said prospecting operations for the development of oil and gas.

"(8) That the said Harry Morris Guaranteed Gusher Syndicate No. 3, nor any one for them, has since, and within the time provided for in said lease, commenced the drilling of a second oil well upon said premises, and has failed to pay, or tender, in the amount, manner, and within the time provided for in said lease, the stipulated rental upon failure to drill said second well as in said lease provided for.

"(9) That the said H. M. Barney, trustee in bankruptcy of said estate, during the month of October, 1924, caused to be cut down and removed from said premises said derrick as the property of said estates in bankruptcy, which derrick was of the then reasonable cash market value of $50.

"(10) That the reasonable cash market value of the ground taken and used for said earthen storage pit or reservoir is $100.

"(11) That about one-half of said oil well casing can be removed and salvaged from said premises, and said hole properly plugged, and this and adjacent premises properly protected, under appropriate permit and supervision and in accordance with the rules and regulations of the conservation department of the state of Arkansas, without damage to said premises.

"(12) That said trustee is about to enter upon said premises for the purpose of pulling and salvaging said casing therefrom as the property of said estates, and will do so unless prevented by the orders of this court.

"(13) That the said trustee cut down and removed said derrick from said premises over the protest and objection of the intervener herein, the said George M. Le Croy.

"(14) That the said George M. Le Croy denies the right of said trustee to enter upon said premises and pull said casing therefrom.

"(15) That the reasonable cash market value of said casing in its present condition and situation is $1,000, of which approximately one-half can be realized by the trustee for these estates, when pulled and removed from said hole in the usual and customary manner.

"(16) That the failure to drill a second well upon said premises and to pay rental in lieu thereof caused said lease to forfeit on the 22d day of November, 1923, while in the hands of the officers of the chancery court, Second division, Union county, Ark., and before coming into the hands of the receiver for said estates in bankruptcy or said trustee."

It is the contention of appellant that the failure to drill a second well upon said premises and to pay rental in lieu thereof caused the lease to forfeit on the 22d day of November, 1923, and that thereafter neither the assignee nor his trustee in bankruptcy had any right to enter upon the premises, that, it would seem the derrick and casing became the property of the lessor, and that the removal of the former, and the proposed removal of the latter, constituted, and would constitute, a trespass. But in the lease it was provided that "lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing." This privilege was not restricted in time. The lease expressly allows the privilege of assignment; therefore the assignee stood in the shoes of the lessee, and its trustee in bankruptcy succeeded to all its rights.

[1] It is urged that this privilege was not exercised within a reasonable time. It appears that about nine or ten months elapsed between the appointment of the trustee and the removal of the derrick and the proposed removal of the casing. The petition in intervention does not claim, and the agreed statement of facts does not disclose, that any injury to plaintiff accrued from this delay. It does appear in the latter that it was necessary for the trustee to proceed in accordance with the rules and regulations of the

conservation department of the state of Arkansas, whereby the casing could be removed and the hole made by drilling properly plugged, and these and adjacent premises properly protected from damage, under appropriate permit and supervision from and by that department. It cannot be said, therefore, from the record, that the action of the trustee was unreasonably delayed.

It was also contended by appellant in his pleading that "to remove said casing will cause this intervener great and irreparable damage, which amount is not ascertainable, in that to remove said casing in all probability will cause the salt water gushing from said well to flow and penetrate the oil-producing sand in said premises."

But the concession in the agreed statement is "that about one-half of said oil well casing can be removed and salvaged from said premises, and said hole properly plugged, and this and adjacent premises properly protected, under appropriate permit and supervision and in accordance with the rules and regulations of the conservation department of the state of Arkansas, without damage to said premises"; and the order of the referee that the trustee is authorized to take such action with respect to pulling said casing as may be authorized by the conservation commission of Arkansas disposes of this contention.

[2, 3] It was agreed in the facts stated that the timber cut and removed in the erection of the earthen storage pit or reservoir, and in arranging to drill the additional wells authorized by the lease, was of the reasonable market value of $10. The lease contemplated that for the purpose of mining and operating for oil and gas it would be necessary to build tanks, towers, stations, and structures on the leased premises to produce, save, and take care of the products. What the bankrupt did appears to have been a reasonable and authorized exercise of this privilege. As said by the trial court:

"The lessee necessarily was compelled to clear the ground for the purpose of constructing a derrick, if there was timber on the land at the place or places where he expected to drill. Likewise it was necessary for him to cut the timber on the place or places where he intended to build tanks, towers, stations, or structures for the purpose of saving and taking care of the oil. An earthen storage tank comes within the definition of a structure."

Furthermore, in the statement of facts it is agreed that the earthen storage pit or reservoir was placed "for use in the preservation and storage of oil expected to be produced from said premises in large quantities."

We think the record fully sustains the trial court, and its decree is accordingly affirmed.