PREWITT, TRUSTEE, v. CHAMBERS.

4-7804                                        194 S. W. 2d 186

Opinion delivered January 28, 1946.

808

*Donham, Fulk & Mehaffy, U. A. Gentry* and *Leffel Gentry*, for appellant.

*McDaniel, Crow & Ward,* for appellee.

McHANEY, Justice. On October 28, 1941, appellants and appellee entered into a written mineral lease agreement whereby appellee leased to appellants 318 acres of land in Saline county for the purpose of mining bauxite ore, upon the terms therein set out, and in which appellee was designated as party of the first part, and Roy Prewitt, trustee, as party of the second part. Appellant Joe Hardin was not mentioned in the lease, but it is undisputed that he was the sole beneficial owner of the rights conveyed, paid all the consideration, and assumed all the obligations mentioned therein. It granted him the right to prospect and mine for bauxite ore, and other minerals, for a period of five years on the lands therein described, and as long thereafter as bauxite is found in paying quantities. It recited a consideration of $1 "and the covenants and undertakings hereinafter provided." It then reads as follows: "The party of the second part shall have the exclusive right, for a period of 12 months, from date hereof, to enter upon said land for the purpose of drilling or otherwise prospecting or testing for bauxite ore, or other minerals, and to do any necessary work for determining the existence of bauxite ore, or other miner-

als, on the surface or beneath the surface, during said 12 months period, and shall have the right to mine any and all of such ore found throughout the life of this lease, for which the party of the first part shall receive .50c per long ton (2,240 pounds) green ore weight, based on bills of lading, or other legal evidence of weight. Payments for such ores to be made to party of first part on or before the 15th day of each month for all ores taken and sold during the preceding month.

"Should the party of the second part desire, at the expiration of the 12 months period above set out, to proceed to mine said ores on royalty basis, as provided, then it shall have the right so to do by commencing to mine, and to mine continuously and to pay royalties of .50c per ton, as set out, which, in the aggregate, shall never be less than $3,000 per year. In lieu of royalties, should unavoidable conditions or circumstances prevent continuous mining, party of the second part agrees to pay party of the first part the sum of $3,000 per year as a minimum royalty and said sum is to be deducted from royalty due first party from the proceeds of tonnage royalty when and if mining is resumed.

"On July 1st of each year an account of all monthly royalties paid shall be rendered to party of first part, which total shall be not less than a minimum of $3,000, and the party of second part shall therefore pay an amount which will, together with royalties paid on monthly basis, equal not less than a minimum of $3,000 for the preceding year.

"In further consideration of payment by party of second part of $2,500, receipt of which is hereby acknowledged, said payment being in lieu of delayed royalties based on .50c per ton, said party of second part shall have the right to delay operations hereunder for a period of 12 months, and for like subsequent periods, from date hereof, and shall have credit for said payment, or payments, on first subsequent tonnage mined, otherwise said payment shall not affect terms of this lease."

Hardin began prospecting for ore on the lease and caused 10 holes to be drilled on one 40 acre tract, but found commercial bauxite in only one of them. At the end of one year, October 28, 1942, the parties disagreed as to the meaning of the lease agreement and certain correspondence between them was had. Appellee took the position that, to delay further operations for a year after October 28, 1942, appellant Hardin should pay an additional $2,500. The latter took the position that, under the last paragraph of the lease, as above quoted, he had the right to delay operations until October 28, 1943, and that the $2,500 already paid covered delay rental for that period, and so the parties could not agree as to what the lease meant.

On March 27, 1943, appellee served a written notice on appellants that the lease agreement had been forfeited and requested them to execute a release to same or otherwise satisfy the record of the lease, as provided by law.

Thereafter, on August 13, 1943, appellants brought this action, alleging that appellee, at the expiration of one year from the date of the lease, had repudiated same and refused further to comply with its terms, and that they elected to rescind same and were entitled to recover the $2,500 already paid. Appellee answered with a general denial and filed a cross-complaint alleging a breach of the lease by appellants and praying judgment for $5,000, two annual delay rentals, for failure of appellants to release same of record after notice so to do.

Trial resulted in a decree dismissing the complaint for want of equity and entering judgment for appellee on his cross-complaint against appellant Hardin only for $5,000, as a statutory penalty for failure to satisfy the record of said lease, and this appeal followed.

We do not undertake an analysis of the terms of the lease agreement above quoted. They speak quite ambiguously for themselves. That they are ambiguous seems to be admitted by both parties. Under date of November 5, 1942, Hardin wrote appellee a letter in which, after

quoting the last paragraph of the lease as above set out, he said: "I take the position that under the paragraph of the lease mentioned, I have the right to delay operations for a further 12-month period from October 28, 1942; that is, that I have the right to delay operation until October 28, 1943. I have been advised by counsel that this interpretation of the contract and of the paragraph mentioned is correct." We think this shows he was acting in good faith and on the advice of counsel, and that this interpretation of the lease was possible.

Our statutes, §§ 10505, 10506 and 10507 of Pope's Digest, relate to the satisfaction or release of oil, gas, or mineral leases of record. Section 10505 makes it the duty of the person holding such a lease, after forfeiting same by failure to pay any rental or to perform any condition in the lease imposed on the lessee, upon a prescribed notice to him by the lessor, to execute a release to the grantor, or otherwise satisfy the record as therein set out. By § 10506, the lessee's failure to satisfy such forfeited lease, after said notice, makes him liable to the lessor or owner in double damages in whatever sum the owner may sustain by reason theerof, "not less than two annual rentals as fixed by the original lease and all costs, including a reasonable attorney's fee to be fixed by the court." Section 10507 provides a method of cancellation of such lease by the lessor by marginal indorsement.

Section 10506 is highly penal, and the general rule, as stated in *K. C. S. Ry. Co.* v. *State,* 194 Ark. 80, 106 S. W. 2d 163, is "that a penal statute must be strictly construed and all questions of doubt resolved in favor of those from whom the penalty is sought." The general rule with reference to the recovery of the statutory penalty for failure of the mortgagee to satisfy the record of the mortgage on payment is stated in 41 C. J., p. 819, § 982, as follows: "While it has been said that the withholding of satisfaction of the mortgage in good faith is not a good defense, the better rule appears to be that, where there are honest, disputed, or doubtful questions,

defendant is not liable if his refusal is made in good faith;—.'' Cases from a number of other jurisdictions are cited to support the text. While we do not here have the question of a penalty for the failure to satisfy a mortgage, we think the same general principle should apply.

We think also that the facts here do not justify the imposition of the penalty provisions of said § 10506, especially in a court of equity, as here. Such courts do not favor penalties and forfeitures and should not enforce them except upon strict compliance with the statute. We do not think the statutes here involved were intended to apply to a lessee who, in good faith and under a reasonable construction of the lease, contends that his lease is not forfeited. Section 10505 makes it the duty of the owner of the lease to satisfy same only "upon forfeiting the rights to further prospect on such lands by failure to pay any rental or to perform any condition," etc. The only claim here is that Hardin failed to pay the rental that appellee claims was due from October 28, 1942, to October 28, 1943. Hardin claims just as strongly and with some reason that the $2,500 paid by him was to pay delay rental for that same period of time.

We conclude that the statute does not apply to the facts here involved, or that there was no forfeiture of the lease by Hardin by refusal or failure to pay rental within the meaning of said statutes.

Also it appears certain that a release executed by Hardin alone, or a satisfaction entered by him on the margin of the record would not have cleared the record title, for the reason that his name nowhere appeared in the lease. Roy Prewitt, trustee, was the lessee, a so-called "naked trustee," in whom the legal title vested and a conveyance by him would have passed the title. Section 1813, Pope's Digest.

The decree will be affirmed, insofar as it denied Hardin a recovery of the $2,500 paid by him, but will be reversed and the cause remanded with directions to dis-

miss the action for penalty on the cross-complaint and to cancel the lease in question. Costs of this appeal will be adjudged against appellee.

The Chief Justice and Mr. Justice McFADDIN dissent as to the reversal.

ED. F. McFADDIN, Justice (dissenting). I dissent as to the reversal.

The majority holds that the lease was forfeited: yet fails to enforce the statute (§ 10505, *et seq.*, Pope's Digest), which requires a lessee to satisfy the lease of record, or be liable for the penalty. The statute is unambiguous. Courts should enforce the applicable statutes, rather than hold that the penalty is too severe.

The majority assigns three reasons for the refusal to enforce the statute. These are: (1) the statute is highly penal, and must be strictly construed; (2) the facts do not justify the imposition of the penalty; and (3) a release by Hardin would not have cleared the record. Let us examine these reasons:

(1) It is true that a statute allowing a penalty is in some instances to be strictly construed; but the rule is also well established, as stated in 59 C. J. 1119: "The rule of strict construction is relaxed in the interpretation of an act designed to declare and enforce a principle of public policy, and a penal statute enacted for the benefit of the public generally should receive a fair and reasonable construction." The statute here (§ 10505, *et seq.*, Pope's Digest) is Act 170 of the Acts of 1923, which strengthened an earlier act (Act 192 of 1921), in order that a landowner would not have his title clouded, and thereby be deprived of his ability to obtain a good lease contract when leasing was in progress. This Act 170 of 1923 declares a sound public policy for the benefit of the public generally. The statute provides for liquidated damages, rather than a penalty. The Legislature made the damages sufficiently large to give the public *full* protection against lease clouding. The act provides for liquidated damages—not a penalty, and should receive a

fair and reasonable construction, rather than a narrow and strict construction.

(2) It is no answer to this statute to say that the facts here presented do not justify the imposition of ''the penalty.'' The statute is plain and unambiguous; the second section reads:

''*Damages for Failure to Release After Forfeiture and Notice*: Any owner of lands upon which a lease for the development of oil or gas, or other minerals has been given, and the lessee forfeits his rights at any time to further prospect for such minerals upon said lands, by reason of a failure to pay periodical rentals, or to perform other conditions that nullify the lease as to lessee's rights therein, may give written notice, served in the manner of a legal summons upon the lessee, demanding that said lessee execute and place on record a release which in effect will remove any cloud existing upon the title of such lands as provided in § 10505: and upon failure of said lessee to comply with said notice, he shall be liable to the lessor or owner of said lands in double damages in whatever sum the owner of such lands may sustain by reason of said cloud or incumbrances upon said lands, after thirty days from the service of said notice, not less than two annual rentals as fixed by the original lease and all costs, including a reasonable attorney's fee to be fixed by the court.''

The appellant, Hardin, is clearly within the letter and the spirit of this statute, and I submit that the courts should enforce the applicable statute and award the damages fixed by the Legislature, rather than grant relief from the statute under some theory of ''abhorring a penalty.''

(3) Finally, the majority says that the release by Hardin would not have cleared Chambers' title of record. The answer to that contention is found in the facts. Hardin initiated this proceeding in the chancery court, claiming as lessee under the lease. He thus brought himself within the statute, and should have executed the re-

lease, or been subjected to the penalty. Hardin filed this suit on October 13, 1943, alleging, *inter alia*, "the said Roy Prewitt, trustee, was acting for the benefit of the plaintiff, Joe Hardin, and the said Joe Hardin is a beneficial owner of said lease and the real party in interest herein." In that complaint Hardin prayed that he recover $2,500 and interest. He made no offer to do equity. To that complaint Chambers filed an answer and cross-complaint, and in the cross-complaint Chambers said: "After it became obvious to the lessor that the lessees had abandoned and forfeited said lease agreement, the lessor attempted to procure a release from the lessees and on March 27, 1943, proper notice of forfeiture and a request for release was prepared and same placed in the hands of the sheriffs and served on Roy Prewitt, trustee, and Joe Hardin, by the sheriffs of their respective counties, as required by law."

Chambers prayed for the damages allowed by the statute, and Hardin filed answer to the cross-complaint denying every allegation. It is thus clear that Hardin by his complaint brought himself within the exact letter of the statute as lessee. I submit that this court should award damages according to the statute. Courts do well to apply the law as made by the Legislature, rather than to allow judicial process to become a means of escape from the plain letter of the law. I, therefore, respectfully dissent.