## No. 39,430

GRACE D. BAKER, (D. WARD BAKER, substituted), *Appellant*, v. E. J. HUFFMAN, C. J. HUFFMAN, LEO C. ELLIS, E. MELVA BROWN and PAUL J. BROWN, *Appellees*.

(271 P. 2d 276)

June 12, 1954.                                                   Opinion filed

*Stanley E. Toland*, of Iola, was on the briefs for the appellant.

*Joe F. Balch*, and *Robert L. Briley*, both of Chanute, were on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action to cancel an oil and gas lease and to quiet title to real estate. A demurrer to plaintiff's evidence was sustained, and plaintiff appeals.

Omitting the formal parts, plaintiff Grace D. Baker, in her petition filed April 10, 1953, alleged she was the owner in fee simple of the real estate in question. In June, 1948, as lessor, she executed and delivered to defendants E. J. and C. J. Huffman, as lessees, an oil and gas lease covering the property in question. The portion of the lease set out in her petition reads as follows:

"... *It is agreed that this lease shall remain in force for a term of 10 years from this date, and as long thereafter as oil or gas, or either of them, is*

*produced from said land by the lessee in paying quantities. . . .* (Italics supplied.)

"If no well be commenced on said land on or before the 1st day of September, 1948, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the First National Bank at Chanute, Kansas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of Eighty and no/100 ($80.00) Dollars which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payment or tenders the commencement of a well may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

Plaintiff further alleged that defendants Huffman assigned their interests in the mentioned lease to defendants Leo C. Ellis, E. Melva Brown and Paul J. Brown; that defendants drilled one producing oil well on the lease, but they failed to produce or market any oil therefrom since April 4, 1951; that no other drilling had been done and no rentals had been paid since the drilling of the initial well, and by virtue of the terms and provisions of the lease as above set forth, the lease had expired by its own terms upon cessation of production, and that the lease had been null and void since April 4, 1951; that on May 20, 1952, plaintiff made written demand upon the defendants for a release of record of said lease, and that defendants failed to comply therewith. The petition closed with a prayer for cancellation of the oil and gas lease and the quieting of her title as against all claims of defendants in and to the real estate in question.

Defendants by way of answer admitted the execution of the oil and gas lease and the terms as set forth by plaintiff, the assignment to them by defendants Huffman, and otherwise denied generally the allegations of the petition. The action was subsequently dismissed as against defendants Huffman. The case proceeded to trial on the pleadings, stipulations of the parties, and oral testimony produced by the plaintiff. Defendants by their answer admitted the execution and delivery of the lease as set forth in the petition, and it was stipulated that the initial and only well drilled upon the leasehold was completed and equipped as a producer on July 28, 1950; that plaintiff received royalties from the oil produced from the well, to and including April, 1951. The evidence disclosed that

a small amount of oil was produced from the well between April, 1951, and August, 1953, none of which was marketed, and plaintiff received no royalty. In August, 1953, defendants, in attempting to increase production, sandfracked the well by using approximately 125 barrels of oil in the process, with the production for the month being increased to 147 barrels, which was approximately 22 barrels in excess of the 125 barrels pumped into the well. The well was pumping at the time of the trial of this action, September 16, 1953. On this record, the court sustained defendants' demurrer to plain- tiff's evidence, and it is from this ruling plaintiff appeals.

It was plaintiff's contention that her evidence disclosed the lease had expired by its terms by reason of defendants' failure to produce oil in paying quantities after April, 1951. Unless the lease in question had expired by its own terms, the trial court did not err. Plaintiff's theory of her case was clearly shown in her petition and brief. This was not an action for forfeiture of an oil and gas lease, nor for damages for the breach of contract where excuses of non-performance might be pleaded, nor was it an action for cancellation of an oil and gas lease based upon a breach of an implied covenant to develop. The action was one to cancel the lease which, as alleged, had expired by its own terms because of the lessees' failure to pro- duce oil and gas in paying quantities continuously during the pri- mary term. Plaintiff argued that the purpose of making an oil and gas lease is for the exploration, development and production of oil and gas, and when the lessee elects to begin development and ob- tains oil and gas, then production must continue in paying quantities if the lease is to remain in force, irrespective of whether the primary term has expired. It is true that once the lessee of an oil and gas lease undertakes to develop the leased premises, the implied covenant to fully develop the leased premises with reasonable diligence applies even during the primary term. ( *Berry v. Wondra,* 173 Kan. 273, 246 P. 2d 282.) Defendants recognize this well-established rule of law. However, plaintiff has neither alleged nor shown by her evidence that defendants have breached that covenant. In her action, plaintiff neither prayed for cancellation of the un-developed portion of the lease nor for an order requiring lessees to develop the lease because of breach of the implied covenant to develop. Her contention was that the lease expired by its own terms, and the prayer was for complete cancellation of the lease on that theory. It was not contended nor does the evidence show any de-

mand on defendants for additional development during the primary term of the lease, nor is there any evidence defendants were unwilling or had refused to develop the lease fully.

Mineral deeds are to be construed in accordance with the intent and purpose of the parties as gathered from the examination of the entire instrument. (*Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899.) With this rule of law in mind, we will examine the lease. Only a portion of it was set forth in the record, as hereinbefore related. It provided that it should remain in force for a period of ten years from its date, and as long thereafter as oil and gas, or either of them, were produced from said land by the lessee in paying quantities. The primary term of the lease ran from June, 1948, to June, 1958. During this term, lessees could either pay the delayed rentals as provided in the lease, or explore and develop the leased property in lieu thereof. The purpose of the "thereafter" clause in the lease was to prescribe conditions which must exist within or at the end of the exploratory period, upon which the lease may be continued beyond the primary term, and to prescribe conditions which must exist after the end of the exploratory period, upon which the lease may continue indefinitely. (2 Summers on Oil and Gas, Perm. ed., 126, § 293.) We find nothing in the contract providing for a forfeiture or cancellation of the lease for the failure of the lessees to produce oil and gas in paying quantities during the primary term of the lease. The failure of lessees to produce or failure, alone, of production in paying quantities during the primary term of the lease did not result in a defeasance *ipso facto.* To hold otherwise would be to read into the lease express provisions which did not exist, and this we cannot do. It cannot be said, in the instant case, that the trial court erred in sustaining defendants' demurrer to the plaintiff's evidence, and in holding that the lease had not expired by reason of its own terms upon the cessation of production of oil and gas in paying quantities during the primary term of the lease.

The judgment of the trial court is affirmed.