**R. V. HILL, Plaintiff,**

v.

**LARCON COMPANY, Defendant.**

**Civ. A. No. 663.**

United States District Court
W. D. Arkansas, El Dorado Division.

May 27, 1955.

Surrey E. Gilliam, Floyd E. Stein, El Dorado, Ark., for plaintiff.

Keith & Clegg, Magnolia, Ark., for defendant.

JOHN E. MILLER, District Judge.

This cause was tried to the court on April 6, 1955, upon the pleadings, the stipulation of the parties and documents mentioned in said stipulation, together with affidavits attached to the motion for summary judgment and the response thereto. At the conclusion of the trial, the case was submitted and the attorneys for the respective parties were requested to file briefs in support of their respective contentions. Said briefs have been received and have been considered by the court along with all of the testimony and stipulation, and the court now makes and files herein its formal Findings of Fact and Conclusions of Law, separately stated.

Findings of Fact.

1.

The plaintiff, R. V. Hill, is a citizen of the State of Arkansas and resides in Union County, Arkansas. The defendant, Larcon Company, is a corporation organized and existing under the laws of the State of Delaware and is authorized to do business in Arkansas. The amount involved exceeds in value the sum of $3,-000, exclusive of interest and costs.

2.

The plaintiff, R. V. Hill, is the owner of the SW¼ of the SW¼ of Section 5, Township 18 South, Range 13 West, in Union County, Arkansas, having acquired the same under the will of Llewellyn Hill, who died testate in Union County, Arkansas, on December 14, 1952.

3.

On December 14, 1950, Llewellyn Hill executed and delivered to Robert C. Wallingsford for a consideration of $10 an oil and gas lease by which he conveyed the land herein involved (with other lands) "for the sole and only purpose of mining and operating for oil and gas and laying of pipe lines, and of building

tanks, power stations, and structures thereon to produce, save and take care of said products."

The lease further provided:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

The lessor was to receive "the equal one-eighth (⅛) part of all oil produced and saved from the leased premises" and "for gas from each well where gas only is found, the equal one-eighth (⅛) of the gross proceeds at the prevailing market rate, for all gas used off the premises."

"If no well be commenced on said land on or before the 14th day of December, 1951, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the First National Bank of El Dorado, Arkansas, or its successors, which shall continue as the depository regardless of changes in ownership of said land, the sum of One Hundred Twenty and No/100 Dollars, (the lease covered a total of 120 acres, so the rental was $1.00 per acre), which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods in the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole, then, in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments.

"Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing."

The lease further provides that the covenants therein shall extend to the heirs, executors, administrators, successors or assigns of the parties.

Also, the lease provided:

"Notwithstanding anything in this lease contained to the contrary, it is expressly agreed and covenanted that if the lessee, his heirs, successors or assigns, shall commence drilling operations at any time while this lease is in force, this lease shall remain in force and effect, and the term and life shall continue as to the entire acreage described herein, so long as such operations are prosecuted, and if production results from such operations, then as long thereafter as such production continues."

4.

The named lessee on February 23, 1951, assigned the lease to Roberts Petroleum, Inc., and on April 16, 1951, Roberts Petroleum, Inc., executed and delivered a deed of trust to Franklin O. Mann, as Trustee of the Harris Trust & Savings Bank, covering an undivided one-half interest in said lease and other

leases to secure an indebtedness of $253,-000.

In the meantime, Robert C. Wallingsford, the original lessee, had either assigned or agreed to assign an undivided one-half interest in the lease to various other persons and, on January 28, 1952, Roberts Petroleum, Inc., executed and delivered a deed of trust to Louisiana Machinery Company, Inc., and West Pontiac, Inc., covering an undivided one-half interest in said lease to secure an indebtedness of $400,000, subject, however, to the deed of trust to Franklin O. Mann, as Trustee.

### 5.

On May 16, 1952, Roberts Petroleum, Inc., filed its petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. Thereafter certain proceedings were had that resulted in adjudicating the said Roberts Petroleum, Inc., a bankrupt on July 30, 1952. J. S. Beebe was appointed Trustee of the estate of the bankrupt and, after serving a few months, resigned and Donald E. Bradham was selected as Trustee.

On May 17, 1954, Bradham, as Trustee, acting under the orders of the court and after proper advertisement, sold and assigned said oil and gas lease to the defendant. At the sale the defendant also purchased the other assets of the bankrupt and, subsequent to the purchase of the interest of the bankrupt in the oil and gas lease herein involved, the defendant acquired by mesne conveyances the interest of all other parties who had acquired an interest in the lease by assignment from Wallingsford or Roberts Petroleum, Inc.

### 6.

A well was drilled on the property in March, 1951, and produced for a few months a total of 20,366 metric cubic feet of gas which was sold to the Arkansas Louisiana Gas Company. The purchaser of the gas paid therefor during the month of April, 1951, $86.59; for the month of May, $194.12; for the month of June, $200.85; for the month of July, $185.40; for the month of August, $72.18, and for the month of September, $32.26.

No gas has been produced or sold from the said lease since September, 1951.

During the year 1951 the total operating cost charged to the well was $355.24, or an average monthly operating cost for the six months period of gas sales of $59.26.

### 7.

No delay rentals were paid at any time and no effort has been made to operate the well on the property since September, 1951, and there has been no production of either oil or gas. Thus no royalties or other considerations have been paid by the lessee or the defendant for any failure of operation and no other wells have been drilled on said property. The only well drilled thereon was the one now in controversy.

### 8.

On January 28, 1953, the plaintiff wrote and mailed to Roberts Petroleum, Inc., the following letter:

"Roberts Petroleum Company
"LeCroy Building,
"El Dorado, Arkansas.
"Gentlemen:
"We refer to the Roberts Petroleum Company lease on Section 5–18–13 of Union County for the production of oil and gas on the Hill estate property. The terms of this lease were such that if the payment of rental and royalties was not made prior to December 20, 1952, the Roberts Petroleum would forfeit their lease on the property.
"Since these payments were not made prior to the December 20 expiration date it is requested that the Roberts Company issue a release on this property to the executor of the Hill estate.
"Yours very truly,
"(Signed) R. V. Hill."
"WCH/jw
"1-28-52

Said letter was received by the addressee and is now in the files of the

bankrupt. The Trustee in Bankruptcy had possession of said letter prior to the sale to the defendant of the lease and the defendant now has possession of the letter.

Donald E. Bradham, the Trustee who conveyed the lease to the defendant as aforesaid, was appointed Trustee in Bankruptcy in November, 1952, and, subsequent to his appointment, the plaintiff advised the Trustee that he desired to farm the land and demanded that the pipe be buried below plow depth so as not to interfere with the farming operations and that the pipe should be left on the land until it could be determined either by agreement or by a court to whom the lease and pipe belonged. At that time the plaintiff was claiming that the oil and gas lease had been abandoned and was also asserting ownership of the pipe and other personal property placed thereon. The Trustee advised Mr. Hill that they were going to abandon the lease and remove the personal property and that it would be an expense to place the lines below plow depth since he was going to recommend the abandonment of the lease as soon as he could obtain a court order to do so. No petition for such order was filed and, of course, no order permitting abandonment was entered. However, in response to the plaintiff's demand, the pipe was taken up and stacked near the separator and tanks on the lease, and it is still there, but the casing has never been pulled from the hole and no attempt has been made to pull the same.

The plaintiff has farmed the land since 1952 as best he could.

### 9.

During the time the Arkansas Louisiana Gas Company was purchasing the gas, lead lines were run from the well to the pipe line of the purchaser, but those lines were disconnected soon after the well ceased to produce and no connection has been made since that time. Thus, there are no facilities to convey gas from the lease to the Arkansas Lou-

isiana Gas Company or any other purchaser.

After the well ceased to produce gas, Roberts Petroleum, Inc., prior to its bankruptcy, purchased gas from other sources to operate producing oil wells in the general area and the defendant, since its purchase of the assets of the bankrupt, has continued to purchase gas from other sources and has taken no gas from the well herein involved.

There has always been and is now a market for any and all gas that might be produced from the land involved herein, and the reason no further gas was sold was that the well failed to produce gas after September, 1951.

### 10.

In November, 1952, shortly after he was appointed Trustee, Bradham made an inventory of the property of Roberts Petroleum, Inc., and thereafter made a report to the Referee in Bankruptcy recommending that the lease in question be abandoned. However, no formal petition of abandonment was filed, as stated in finding of fact No. 8, because of a conflict of claims of ownership of the said lease.

During the time he was Trustee Bradham operated other oil and gas property of the bankrupt and made many necessary repairs on said property, although no new wells were drilled. No attempt was made to operate the lease in question, and of course no repairs were made on any of the machinery.

### 11.

The conveyance by the Trustee to the defendant conveyed, along with other property, the lease in question, together with the derrick and all machinery and equipment placed thereon by the bankrupt or Wallingsford.

### 12.

The derrick, pipes, etc., placed on plaintiff's land in connection with the oil well made it difficult, if not impossible, for plaintiff to farm approximately four acres of said land. However, there

was no substantial evidence as to the probable monetary damage sustained by plaintiff, if any, by reason of the well and pipes being on the property.

On November 8, 1954, plaintiff made demand upon the defendant for release of the lease and for ownership of the personal property, and on December 22, 1954, formal written notice was served upon defendant demanding such release.

The defendant refused to release the lease or the personal property and contended that the lease was still in full force and effect.

### 13.

As heretofore stated in Finding of Fact No. 8, subsequent to his appointment as Trustee in November, 1952, Bradham attempted to remove some pipe from the plaintiff's premises, but was prevented from doing so by plaintiff. This incident occurred during the latter part of 1952 or the early part of 1953, and thereafter the Trustee made no further effort to remove any of the personal property.

### Discussion.

The three primary questions raised by the parties are: (1) Does the defendant own the lease? (2) Has the lease been forfeited by reason of abandonment? (3) Has there been a technical forfeiture of the lease?

With regard to the first question, plaintiff contends that the Trustee in Bankruptcy did not accept or assume the lease and personal property (derrick etc.) within sixty days after the adjudication of bankruptcy, as required by 11 U.S.C.A. § 110, sub. b, and that the Trustee therefore acquired no title to said lease and personal property and could not transfer the same to the defendant.

Plaintiff is correct in his contention that the failure of a trustee to take affirmative action within 60 days to adopt or reject a lease amounts to a rejection of the lease. Ten-Six Olive, Inc., v. Curby, 8 Cir., 208 F.2d 117, 123; Wiemeyer v. Koch, 8 Cir., 152 F.2d 230, 234. In the instant case there was no direct evidence as to whether the first Trustee, J. S.

Beebe, accepted or rejected the lease within 60 days after the adjudication of bankruptcy, which was on July 30, 1952. However, it was clear from the evidence that as of November, 1952, the second Trustee, Bradham, intended to and did abandon and reject the lease.

But plaintiff is not correct in his contention that the same rule is applicable to the derrick and other equipment placed on the property by the lessee. This personal property (as distinguished from the lease itself) was owned by the bankrupt and title to said property was vested, by operation of law, in the Trustee in Bankruptcy on the date of the filing of the petition. 11 U.S.C.A. § 110, sub. a(5). See also, LeCroy v. Barney, 8 Cir., 12 F.2d 363. The title automatically being vested in the Trustee, he had no duty to accept or reject said personal property within 60 days or any other specific period of time. It is true that the Trustee can abandon such property, although there is some conflict of authority as to whether the Trustee must have an order of the bankruptcy court before abandoning property. Schmidt v. Esquire, Inc., 7 Cir., 210 F.2d 908, 913; Stanolind Oil & Gas Co. v. Logan, 5 Cir., 92 F.2d 28; In re Yalden, D.C.Mass., 109 F.Supp. 603; Vol. 4, Collier on Bankruptcy, 14th Ed., Sec. 70.42; In re Aldrich's Estate, 35 Cal.2d 20, 215 P.2d 724, 19 A.L.R.2d 890.

The general rule is stated in Schmidt v. Esquire, Inc., supra, at page 913 of 210 F.2d, as follows:

"It is true, as a general principle of law, that a trustee in bankruptcy may abandon onerous or unprofitable assets. * * * It is likewise certain that title to abandoned assets thereupon revests in the bankrupt. * * * It is not so certain just what action by the trustee is necessary to constitute an abandonment. There is no universally applied formula which he is required to follow, and whether abandonment has occurred in a particular case is usually a question of fact. * * * The trustee may expressly declare his in-

tent to abandon, Sessions v. Romadka, 145 U.S. 29, 12 S.Ct. 799, 36 L. Ed. 609, while in some cases a mere failure by the trustee to administer property of which he has knowledge has been held sufficient. * * *

"It is generally assumed that an order of the bankruptcy court is not requisite to the abandonment of property by the trustee. However, it is essential to recognize that it is the court which administers the estate through its officer, the trustee, who is always subject to the court's control." (The Court held that since the bankruptcy court had adopted a rule requiring the approval of the court before abandonment of property, the trustee could not abandon a claim of the bankrupt in the absence of a court order.)

In the case of In re Yalden, supra, the Court at page 604 of 109 F.Supp., said:

"There is no procedure prescribed by the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., to be followed by the trustee in abandoning property. Although it is better practice for the trustee to file a petition for allowance of the abandonment, and to have this passed upon by the referee, this is not necessary. It is enough if the trustee did in fact abandon the property. Mere inaction with respect to the property is not enough, but it is sufficient if the trustee clearly indicates his intention to abandon the property as valueless. In re Webb, 4 Cir., 54 F.2d 1065; In re Malcom, D.C., 48 F. Supp. 675, and the numerous cases there cited."

In the instant case there were no statements or actions by the Trustee indicating an intention to abandon the personal property in question. To the contrary, in November, 1952, the Trustee inventoried the property and carried it as an asset of the bankrupt. Shortly after the inventory was made plaintiff requested the Trustee to have the pipe buried so it would not interfere with his farming operations. At that time the Trustee, Bradham, informed plaintiff that the lease would be abandoned and the personal property would be removed. Thus it is clear that the Trustee at that time, and at all times material herein, claimed the ownership of the personal property and at no time abandoned or intended to abandon said personal property. It is likewise evident that by reason of the sale of May 17, 1954, the defendant became the owner of said personal property.

Therefore, plaintiff's contention that the defendant never acquired title to the personal property is without merit.

The next question is whether the lease has been forfeited by abandonment, and if the lease has forfeited whether the defendant is entitled to remove the personal property.

Doubtlessly the lease was forfeited by the Trustee by reason of abandonment. Not only did the Trustee expressly declare his intent to abandon the lease, which, under the majority rule, would amount to an abandonment even in the absence of a court order, In re Yalden, supra, but he likewise breached the lessee's implied covenant to explore and develop the lease, said covenant existing by virtue of the fact that the primary consideration for the lease was the anticipated royalties. As to the implied covenant, see Wood v. Arkansas Fuel Oil Co., D.C.Ark., 40 F.Supp. 42; Alphin v. Gulf Refining Co., D.C.Ark., 39 F.Supp. 570; Saulsberry v. Siegel, 221 Ark. 152, 252 S.W.2d 834; Smart v. Crow, 220 Ark. 141, 246 S.W.2d 432; Poindexter v. Lion Oil Refining Company, 205 Ark. 978, 167 S.W.2d 492; Ezzell v. Oil Associates, Inc., 180 Ark. 802, 22 S.W.2d 1015.

In the latter case, the Court at page 814 of 180 Ark., at page 1019 of 22 S. W.2d, said:

"The question of abandonment or not is a mixed question of law and fact, and each case must depend upon its own particular facts and circumstances. The intention of the lessee cannot be gathered from any statement of his alone. It must be

determined from his intention as shown by his acts and conduct."

Thus, as heretofore stated, it seems clear that the Trustee, Bradham, both by his statements and actions, intended to and did abandon the lease in November, 1952.

This abandonment amounted to a forfeiture of the lease, and the next question is whether the defendant is now entitled to remove the personal property. As stated in Finding of Fact No. 3, the lease provided that the lessee shall have the right at any time to remove all machinery and fixtures placed on the premises, including the right to draw and remove casing. No time limit for such removal is fixed by the lease. However, under the Arkansas law "this clause should be construed so as not to give the lessee an indefinite length of time to remove his equipment after expiration or abandonment of his lease, but that the right reserved to move the equipment must be exercised within a reasonable time and a failure to do so would result in the forfeiture of the lessee's right in the property which would thereafter be considered as a part of the realty and title thereto vested in the lessor." Louisiana Oil Refining Corporation v. Haltom, 188 Ark. 117, 120, 64 S.W.2d 98, 99. Of course, what is a reasonable time in which to remove the equipment depends upon the facts and circumstances in the case. McLeon v. Wells, 207 Ark. 303, 180 S.W.2d 325. See also, LeCroy v. Barney, 8 Cir., 12 F.2d 363.

In the present case the lease was abandoned in November, 1952, and shortly thereafter (during the latter part of 1952 or the early part of 1953) the Trustee informed plaintiff that he was going to remove the personal property. In fact the Trustee took up some of the pipe, with the intention of removing it, but he was informed by plaintiff that plaintiff claimed to own the pipe and other personal property by reason of abandonment. The Trustee, in response to plaintiff's demand, stacked the pipe near the separator and tanks on the lease, and no further attempt was made by the Trustee to remove any of the personal property.

The instant suit was filed in February, 1955, and plaintiff contends that the personal property has been abandoned for a period of approximately three and one-half years, which is an unreasonable length of time for defendant to delay in removing the personal property. On the other hand, defendant contends that the plaintiff, by asserting ownership of the personal property in late 1952 or early 1953, prevented defendant from removing the property and is estopped to claim that the time elapsing thereafter should be considered as a part of the period of abandonment.

The Court is convinced that defendant's contention in this regard is well taken. In Winn v. Collins, 207 Ark. 946, at page 953, 183 S.W.2d 593, at page 597, the Court quoted from Thornton's Oil and Gas (5th Edition), vol. 2, Sec. 276, as follows:

" 'By unjustifiably bringing suit to cancel a lease, a lessor may postpone the development of the leased premises and put himself in a position to debar his right to insist upon a forfeiture for non-development of the premises within the time fixed by the lease. *Even conduct denying the validity of the lease and expressing an intention to terminate it may be such as will debar his right to have it forfeited for failure to develop the premises on time. Such conduct will usually postpone the development so long as it is indulged. The lessee is not bound to expend money, so long as such a threat overhangs the validity of the lease, in developing it.*' " (Emphasis added.)

See also, Haddock v. McClendon, Ark., 266 S.W.2d 74, decided March 29, 1954.

It is true, as plaintiff contends, that the above stated rule is inapplicable to the lease itself, since the Trustee expressly abandoned the lease and had no intention of developing it in the future. But the principle contained in the rule is applicable to the personal property.

By claiming ownership of the personal property and by refusing to permit the Trustee to remove the pipe, plaintiff certainly relieved the Trustee of the duty to make any further attempt to remove the personal property. The delay occurring thereafter was caused by plaintiff's own action, and cannot be charged to the Trustee or to the defendant.

■ Thus the ultimate question in this regard is whether the Trustee's delay from November, 1952 (the date of the abandonment) to the latter part of 1952 or the early part of 1953 (the date when plaintiff refused to permit the Trustee to remove the pipe and informed the Trustee of plaintiff's claim of ownership of the personal property) constituted an unreasonable delay. The Court is of the opinion that such delay was not unreasonable, particularly since the delay was during the winter when little or no farming operations were being carried on and when no appreciable damage was being sustained by plaintiff by reason of the personal property being on his land. It follows that the defendant owns the personal property and has the right to remove the same, and the Court will grant said defendant 60 days from the date of the judgment herein in which to remove said personal property.

The remaining question raised by the parties is whether there was a technical forfeiture of the lease because of the non-payment of rentals by the lessee. The defendant earnestly contends that the lease, by its own terms, is still in full force and effect, and cites the cases of Sohio Petroleum Company v. V. S. & P. R. R., 222 La. 383, 62 So.2d 615, and Baker v. Huffman, 176 Kan. 554, 271 P. 2d 276, in support of said contention. The Court feels that it is unnecessary to decide whether there has been a technical forfeiture of the lease, since the implied covenant to develop and the law of forfeiture by abandonment operate independently of the lease itself, and the Court has found that the lease was forfeited by abandonment. Stated differently, regardless of whether or not the lessee has complied technically with the terms of the lease with respect to payment of rentals, etc., nevertheless said lessee may forfeit the lease by abandonment or by the failure to fully develop said lease.

■ The defendant's contention on this point, however, is material on the question of whether plaintiff would be entitled to double damages under the provisions of Sections 53-312 to 53-314, Ark.Stats.1947, Annotated. It has been held that said statutes are inapplicable "to a lessee who, in good faith and under a reasonable construction of the lease, contends that his lease is not forfeited." Prewitt v. Chambers, 209 Ark. 807, 194 S.W.2d 186, 188. In the instant case the lessee, in good faith, contended and still contends that the lease is in full force and effect, and the provisions of the lease are such that a possible and reasonable construction of said lease might support the lessee's contention, in the absence of the finding by the Court that the lease was in fact abandoned in November, 1952. In any event, there is sufficient substance to defendant's contention that the defendant could not be charged with double damages for failure to release the lease upon plaintiff's demand of December 22, 1954.

Moreover, any damages sustained by plaintiff by reason of the derrick and other personal property being on the premises was caused by his own action in preventing the Trustee from removing said property.

Therefore, (1) plaintiff is entitled to have the oil and gas lease cancelled and to have the title to said leasehold interest quieted in him as against the defendant; (2) plaintiff is not entitled to recover any sum as damages; (3) defendant should be allowed 60 days in which to remove the derrick and other equipment remaining on the premises; if defendant fails to remove said property within 60 days the title to said property should vest in the plaintiff; (4) each party should pay his or its own costs.

Conclusions of Law.

**1.**

The Court has jurisdiction of the parties to and the subject matter of this action.

**2.**

The lease involved herein was forfeited by reason of abandonment, and said lease should be cancelled and the title to said leasehold interest quieted in the plaintiff, R. V. Hill, as against the defendant, Larcon Company.

**3.**

The derrick and other personal property were not abandoned by the lessee, and defendant is the owner of said property and should be allowed 60 days in which to remove it from plaintiff's premises.

**4.**

Plaintiff is not entitled to recover any damages of and from the defendant.

**5.**

Each party should pay his or its own costs.

A judgment in accordance with the above should be entered.